**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**AMES SINTERING COMPANY (90–1478), Jose (Joseph) L. Cornudella (90–1479), Patrick L. Dillon (90–1480), Defendants–Appellants.**

**Nos. 90–1478, 90–1479 and 90–1480.**

United States Court of Appeals,
Sixth Circuit.

Argued Aug. 7, 1990.

Decided Oct. 17, 1990.

Marion L. Jetton (argued), John J. Powers, III, U.S. Dept. of Justice, Antitrust Div., Washington, D.C., Mary K. Ramirez, Robin Ross Mann, Kent Brown, U.S. Dept. of Justice, Chicago, Ill., for plaintiff-appellee.

Francis D. Morrissey, William J. Linklater, John C. Filosa, Baker & McKenzie, Michael D. Monico, Barry A. Spevack (argued), Monico, Pavich & Spevack, Chicago, Ill., Edward C. Cutlip, Jr., William A. Sankbeil, Kerr, Russell & Weber, Detroit, Mich., for defendants-appellants.

Before WELLFORD and SUHRHEINRICH, Circuit Judges, and BELL *, District Judge.

PER CURIAM.

In this case, Defendants–Appellants Ames Sintering Co., Inc. and Jose Cornudella, appeal their convictions on two counts of wire fraud and one count of conspiracy to commit wire fraud. 18 U.S.C. §§ 1343 and 371. Defendant–Appellant Patrick Dillon appeals his conviction on one count of aiding and abetting wire fraud and one count of conspiracy. All of the appeals referred to were combined for hearing and opinion.

I.

The facts set forth in the indictment are not in dispute. Ames Sintering Company [hereinafter Ames], a Delaware corporation, operates as a sales and engineering representative in the United States for Ames S.A., a corporation located in Barcelona, Spain, which manufactures and sells sintered metal parts, some of which are sold in the United States. Defendant–Appellant Cornudella is the engineering manager of Ames Sintering Company. Defendant–Appellant Dillon is a sales representative for Ames in Michigan.

In June of 1988, General Motors, Inc. [hereinafter GM] sought bids on a contract to manufacture sintered pressure plates, which would be used to build power steering systems for the 1989 model year. Two companies had provided GM with this part in the past. Ames previously had supplied GM with forty-percent of its pressure plate requirements. Deco–Grand, Inc. [hereinafter Deco] previously had supplied GM with sixty-percent of its pressure plate requirements. GM sent bid requests for quotes to both Ames and Deco on June 6, 1988. Each company's bid was due on June 10, 1988.

On June 6, 1988, Cornudella telephoned Keith Hale, Vice President and General Manager of Deco, at Hale's office in Troy, Michigan. During that conversation, Cornudella proposed to Hale that Ames and Deco enter into an agreement to 'rig' the bids so that both companies could maintain their previous shares. Hale told Cornudella that he would consider the matter, and agreed to speak with Cornudella the next day. Hale then contacted the government, informed them of Cornudella's proposal, and agreed to cooperate with the government.

On June 7, Cornudella placed an interstate telephone call from Decatur, Alabama to Hale, at Hale's residence in Rochester Hills, Michigan, in order to arrange a time at which they would discuss further the terms of the proposed bid-rigging plan. On June 8, Cornudella made three calls from Alabama to Dillon's residence in Michigan. Cornudella and Dillon agreed to meet with

* The Honorable Samuel H. Bell, Judge, United States District Court for the Northern District of Ohio, sitting by designation.

Hale on June 9 to discuss further the terms of the proposed agreement. Also on June 8, Cornudella made an interstate call from Alabama to Hale's office in Michigan to arrange a time for the June 9 meeting. During this conversation, Cornudella reviewed the terms of the proposed bid-rigging plan.

On June 9, Cornudella and Dillon met with Hale to discuss further the terms of the proposed bid-rigging plan. Under the proposal, Ames would retain forty-percent of the pressure plate business, and Deco would retain sixty-percent of GM's business. Hale did not commit himself to appellants' plan at the June 9 meeting, and the following morning Hale informed Cornudella that he would not participate in the proposed plan.

A three-count indictment charged appellants Ames and Cornudella with two counts of wire fraud, and one count of conspiracy to commit wire fraud. 18 U.S.C. §§ 1343 and 371. Dillon was charged with one count of aiding and abetting wire fraud and one count of conspiracy. Before trial, appellants moved to dismiss the indictment on the ground that it did not set forth a violation of 18 U.S.C. §§ 1343 and 371. The district court held that the indictment sufficiently charged a violation of both the wire fraud and conspiracy statutes, and denied appellants' motion to dismiss.

The defendants agreed to plead guilty to each count with which they were charged, conditioned on their right to appeal the district court's ruling on the defendants' joint motion to dismiss the indictment. After entry of their guilty pleas on January 4, 1990, and after sentencing, defendants filed this appeal. The question now before this court is whether the trial court improperly denied appellants' motion to dismiss the indictment.

## II. 18 U.S.C. § 1343

Section 1343 of Title 18 provides in pertinent part:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pre-, tenses, representations, or promises, transmits or causes to be transmitted by means of wire ... any ... signs, signals, ... or sounds for the purpose of executing such scheme or artifice, shall be fined not more than $1000 or imprisoned not more than five years, or both. * * *

18 U.S.C. § 1343.

■ To prove a wire fraud offense under § 1343, the government must establish: (1) a scheme to defraud; and (2) use of wire communications in furtherance of the scheme. *See Pereira v. United States,* 347 U.S. 1, 8, 74 S.Ct. 358, 362, 98 L.Ed. 435 (1954) (mail fraud); *Lombardo v. United States,* 865 F.2d 155, 157 (7th Cir.), *cert. denied,* 491 U.S. 905, 109 S.Ct. 3186, 105 L.Ed.2d 695 (1989); *United States v. Herron,* 825 F.2d 50, 53–54 (5th Cir.1987). In addition, the government must prove that the scheme must have intended to deprive a victim of money or property. *McNally v. United States,* 483 U.S. 350, 359–60, 107 S.Ct. 2875, 2881–82, 97 L.Ed.2d 292 (1987).

Appellants contend that, in accordance with *McNally,* their actions did not amount to a scheme to deprive GM of property rights because GM's property or money was never placed in jeopardy. Further, appellants contend that the indictment failed to allege a violation of 18 U.S.C. § 1343 because the indictment described "a proposed agreement" to defraud GM, rather than a "scheme" to defraud GM.

### A. *Analysis Under McNally.*

In *McNally,* the Supreme Court interpreted the "any scheme or artifice to defraud" language of the mail fraud statute, 18 U.S.C. § 1341. The Court held that the mail fraud statute does not encompass "intangible rights," *McNally,* 483 U.S. at 356, 107 S.Ct. at 2879, but rather the statute is "limited in scope to the protection of property rights." *Id.* at 360, 107 S.Ct. at 2881. In *Carpenter v. United States,* 484 U.S. 19, 108 S.Ct. 316, 98 L.Ed.2d 275 (1987), the Supreme Court applied *McNally* to the wire fraud statute, stating: "[s]ections 1341 and 1343 reach any scheme to deprive another of money or property by means of false or fraudulent pretenses, representa-

tions, or promises." *Id.* at 27, 108 S.Ct. at 321.

The enactment of 18 U.S.C. § 1346 [1], effective November 18, 1988, has overridden *McNally.* However, an analysis under *McNally* applies to the present case because the conduct in question occurred prior to the enactment of § 1346. *See United States v. Davis,* 873 F.2d 900, 902 (6th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 292, 107 L.Ed.2d 271 (1989) (§ 1346 has no retroactive application).

Therefore, appellants argue that, in accordance with *McNally,* their actions did not amount to a scheme to deprive GM of property rights because GM's property or money was never placed in jeopardy. This court finds appellants' argument unpersuasive.

In support of their contention, appellants cite *McNally, supra, United States v. Runnels,* 877 F.2d 481 (6th Cir.1989) (en banc); and *United States v. Covino,* 837 F.2d 65 (2d Cir.1988). Each of these cases, however, dealt with "intangible rights," such as the right to an honestly administered government, and not a victim's exposure to a potential loss of money or property, as in the present case. Only those cases in which a conviction was based entirely on the intangible rights theory have been overturned on *McNally's* authority. *See Runnels,* 877 F.2d at 488; *United States v. Horton,* 847 F.2d 313 (6th Cir. 1988).

■ The government need only charge that the defendant *intended* to defraud the victim of money or property, not that the victim was actually deprived of money or property. *United States v. Utz,* 886 F.2d 1148, 1151 (9th Cir.1989). *See also United States v. Oren,* 893 F.2d 1057, 1061 (9th Cir.1990) (nothing in *McNally* supports the argument that an actual loss is required).

■ In the present case, the indictment charges that the appellants did "knowingly and willfully transmit ... by means of wire communications ... signs, signals, or sounds in furtherance and execution of a

scheme and artifice to defraud GM of money and property in violation of Title 18, United States Code, Section 1343." In accordance with *Utz* and *Oren,* the indictment in this case was adequate.

Accordingly, this court finds that the district court was correct in determining that the indictment properly charged appellants with intending to defraud GM of money or property.

B. *Whether a Proposed Agreement is Sufficient to Constitute a Violation of § 1343.*

Appellants contend that the telephone calls in question were made to *propose* an agreement to undertake a future course of action, and, therefore, cannot be part of the execution of a fraudulent scheme. This court also finds this argument unpersuasive.

■ Actual success is not an element of § 1343. *Oren,* 893 F.2d at 1061; *Schreiber Distributing Co. v. Serv–Well Furniture Co.,* 806 F.2d 1393, 1400 (9th Cir.1986); *United States v. Hammond,* 598 F.2d 1008, 1010, *remanded on other grounds,* 605 F.2d 862 (5th Cir.1979); *United States v. O'Malley,* 535 F.2d 589 (10th Cir.), *cert. denied,* 429 U.S. 960, 97 S.Ct. 383, 50 L.Ed.2d 326 (1976).

The *O'Malley* court held:

[It] is well established that in a prosecution under 18 U.S.C. § 1343, i.e., use of interstate communications to further a preconceived scheme to defraud, the prosecution need not prove that the scheme was successful or that the intended victim suffered a loss or that the defendant secured a gain. The gist of the offense is a scheme to defraud and the use of interstate communications to further that scheme.

535 F.2d at 592. Further, "§ 1343 only requires that the defendant transmit or cause to transmit an interstate or foreign communication, *intending* that the communication will help further the scheme. There is no requirement that the communi-

---

**1.** Section 1346 provides: "For purposes of this chapter, the term 'scheme or artifice to defraud' includes a scheme or artifice to deprive another of the intangible right of honest services."

cation *actually* further the scheme." *Hammond,* 598 F.2d at 1010 (citing *United States v. Patterson,* 528 F.2d 1037 (5th Cir.1976) (emphasis in original)).

■ In this case, Keith Hale, Deco's vice-president, cooperated with the government, never intending to agree to appellants' plan. Hale's cooperation with the government made appellants' plan impossible to complete. However, as stated above, actual success is not an element of § 1343. It is of no consequence that Hale's cooperation with the government made the plan impossible to complete. The fact is, appellants developed a plan intending to deceive GM, and used interstate wire communications to execute it.

Accordingly, the district court was correct in finding that the indictment sufficiently charged violations of 18 U.S.C. § 1343.

### III. 18 U.S.C. § 371

■ 18 U.S.C. § 371 provides in pertinent part:

> If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.
>
> \*    \*    \*    \*    \*    \*

*Id.*

Appellants contend that a wire fraud conspiracy cannot stand where the underlying charge of fraud, based on an alleged effort to violate Section 1 of the Sherman Act, does not in itself constitute a criminal offense because a single economic entity cannot conspire with itself and Section 1 of the Sherman Act does not proscribe attempts. In support of their contentions, appellants cite *Copperweld Corp. v. Independence Tube Corp.,* 467 U.S. 752, 104 S.Ct. 2731, 81 L.Ed.2d 628 (1984). The *Copperweld* Court held that a corporation and its wholly owned subsidiary are incapable of conspiring with each other for purposes of Section 1 of the Sherman Act. *Id.* at 777, 104 S.Ct. at 2745.

Appellants rely on Sherman Act cases to support their argument. In accordance with federal antitrust law, a corporation cannot conspire with its officers or employees. *Nelson Radio & Supply v. Motorola,* 200 F.2d 911, 914 (5th Cir.1952), *cert. denied,* 345 U.S. 925, 73 S.Ct. 783, 97 L.Ed. 1356 (1953). However, appellants were not charged with violating the Sherman Act, but rather the wire fraud statute. While this court is aware of the fact that many bid-rigging cases are brought under the Sherman Act, we find that the actions of the appellants, in this case, constitute a violation of the wire fraud statute, 18 U.S.C. § 1343. Indeed, the government has prosecuted bid-rigging schemes without invoking the Sherman Act. *See Moore v. United States,* 865 F.2d 149 (7th Cir. 1989); *United States v. Asher,* 854 F.2d 1483 (3d Cir.1988), *cert. denied,* 488 U.S. 1029, 109 S.Ct. 836, 102 L.Ed.2d 969 (1989). Accordingly, the *Copperweld* holding is inapplicable in this case.

Lastly, we turn to the issue of whether a corporation may conspire with its officers, employees, and agents. This court has held a number of times that a corporation may conspire with its officers and employees.[2] *See United States v. Mahar,* 801 F.2d 1477 (6th Cir.1986); *United States v. S & Vee Cartage Co.,* 704 F.2d 914 (6th Cir.), *cert. denied,* 464 U.S. 935, 104 S.Ct. 343, 78 L.Ed.2d 310 (1983).

---

**2.** Other courts have held accordingly. *See United States v. Wise,* 370 U.S. 405, 417, 82 S.Ct. 1354, 1362, 8 L.Ed.2d 590 (1962) (Harlan, J. concurring) ("... the fiction of corporate entity, operative to protect officers from contract liability, had never been applied as a shield against criminal prosecutions ..."); *United States v. Peters,* 732 F.2d 1004, 1008 (1st Cir.1984) ("[t]he actions of two or more agents of a corporation, conspiring together on behalf of the corpora-

tion, may lead to conspiracy convictions of the agents ..."); *United States v. Hartley,* 678 F.2d 961, 970 (11th Cir.1982), *cert. denied,* 459 U.S. 1170, 103 S.Ct. 815, 74 L.Ed.2d 1014 (1983) ("[t]he fiction [of intracorporate conspiracy] was never intended to prohibit the imposition of criminal liability by allowing a corporation or its agents to hide behind the identity of the other.")

In *Mahar*, we found that a corporation may be convicted of conspiring with its officers and employees to distribute controlled substances. *Mahar*, 801 F.2d at 1488. In *S & Vee Cartage Co.*, we held that "in the criminal context a corporation may be convicted of conspiring with its officers." *S & Vee Cartage Co.*, 704 F.2d at 920. We see no reason to deviate from this general principal in this case.

Accordingly, this court finds that the indictment properly alleged a conspiracy among Ames, Cornudella, and Dillon, in violation of 18 U.S.C. § 371.

## IV.

In conclusion, for the reasons stated herein, the judgments of the district court are AFFIRMED.

