# United States Court of Appeals

## For the First Circuit

No. 11-2053

MARCIA MEI-LEE LIU, individually and on behalf of a class of all others similarly situated,

Plaintiff, Appellant,

v.

AMERCO; U-HAUL INTERNATIONAL, INC.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. George A. O'Toole, Jr., U.S. District Judge]

Before

Boudin, Lipez and Thompson,

Circuit Judges.

Charles E. Tompkins with whom Ian J. McLoughlin, Robert E. Ditzion and Shapiro Haber & Urmy LLP were on brief for appellant.
G. Patrick Watson with whom David A. Zetoony, Bryan Cave, LLP, W. Scott O'Connell and Nixon Peabody, LLP were on brief for appellees.

May 4, 2012

**BOUDIN, Circuit Judge.** On July 21, 2010, Marcia Liu filed a complaint in federal district court in Massachusetts charging Amerco, Inc. and its wholly owned subsidiary U-Haul International, Inc.--collectively "U-Haul"--with violating Massachusetts General Laws ch. 93A. The complaint asserted that U-Haul had engaged in what was in substance an <u>attempted</u> price-fixing scheme and the complaint sought damages on behalf of both Liu and a large class of persons who rented U-Haul vehicles for certain trips within a specified period.

Ordinarily, when a seller of goods or services attempts to fix prices with a competitor but fails in that endeavor, no consumer is damaged; but Liu's complaint alleged peculiar facts not uncovered by Liu but recounted in documents stemming from an investigation by the Federal Trade Commission ("FTC"); the documents included the summary of a proposed consent order between U-Haul and the agency made public in the month before Liu filed her own law suit. <u>Federal Trade Commission, U-Haul Int'l, Inc. and AMERCO</u>, 75 Fed. Reg. 35033, 35034 (June 21, 2010) (hereinafter "<u>FTC Summary</u>").

According to the FTC complaint and the summary of the proposed consent order, in 2006 Edward Shoen--the chairman and president of Amerco and the chairman and chief executive officer of U-Haul--planned and took steps to implement a scheme to collude with U-Haul's major competitors--Avis Budget Group, Inc. ("Budget")

-2-

and Penske Truck Leasing Co., L.P. ("Penske")--to raise prices in the market for one-way truck rentals.  As summarized by the FTC, the initial strategy was straightforward:

> Mr. Shoen instructed U-Haul regional managers to raise rates for truck rentals, and then contact Budget to inform Budget of U-Haul's conditional rate increase and encourage Budget to follow, or U-Haul's rates would be reduced to the original level.
>     At about the same time, Mr. Shoen also instructed local U-Haul dealers to communicate with their counterparts at Budget and Penske, with the purpose of re-enforcing the message that U-Haul had raised its rates, and competitors' rates should be raised to match the increased U-Haul rates.

FTC Summary, 75 Fed. Reg. at 35034.

According to the FTC, this "plan" was communicated to U-Haul's regional managers and local dealers in memoranda sent by Shoen in October and November of 2006.[1]  The memoranda even included suggested talking points for managers making calls to competitors.  The FTC recounted evidence from a U-Haul regional manager in Tampa, Florida, who corroborated the existence of the memoranda, confirmed that he acted in conformity with the plan as described, and wrote a follow-up email to U-Haul's senior

---

[1]The FTC complaint quoted specific portions of the memoranda. For example: "Budget continues in some markets to undercut us on One-Way rates.  Either get below them or go up to a fair rate. Whatever you do, LET BUDGET KNOW.  Contact a large Budget Dealer and tell them.  Contact their company store and let the manager know . . . My direction is either get up to a fair rate or get down below the competitor.  EITHER WAY, LET THEM KNOW." In re U-Haul Int'l, Inc., 2010 WL 2966779, at *2-3 (F.T.C. July 14, 2010).

executives describing his actions to implement the plan.  <u>In re U-Haul Int'l, Inc.</u>, 2010 WL 2966779 at *3.

The FTC also set forth comments made by Shoen during an earnings conference call with analysts that took place on February 7, 2008.  Shoen was allegedly aware that Budget would monitor the call, so he announced U-Haul's unilateral price increase and said that U-Haul would keep its prices at the elevated level if Budget responded in kind with rates that were within 3 to 5 percent of U-Haul's.[2]  The FTC made no findings as to the consequences of the direct or indirect attempts, concluding that the overtures were unlawful regardless of whether the parties reached and successfully implemented an agreement to collude on prices.  <u>FTC Summary</u>, 75 Fed. Reg. at 35034-35.

The FTC concluded that U-Haul's "particularly egregious conduct," <u>FTC Summary</u>, 75 Fed. Reg. at 35035, violated Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45(a)(1), which forbids "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or

---

[2]Specific examples of the comments included: "we're very, very much trying to function a price leader [sic] and not give away [market] share"; "me trying to get us to exercise price leadership every time we get what we consider to be an opportunity, it's another indicator to [Budget] as to, hey, don't throw the money away"; "[i]f [Budget] cave[s] on prices the net effect is we got less money"; "if [Budget] perceive[s] that we'll let them come up a little bit [on price], I remain optimistic they'll come up, and it has a profound effect on us." <u>In re U-Haul Int'l, Inc.</u>, 2010 WL 2966779 at *4-5.

affecting commerce."  The proposed consent order provided injunctive relief designed to prevent U-Haul "from inviting collusion and from entering into or implementing a collusive scheme." FTC Summary, 75 Fed. Reg. at 35035.  U-Haul consented to the relief sought, but did not admit either to the conduct or to the violation.  In re U-Haul Int'l, Inc., 2010 WL 2966779 at *20-21.

Liu's suit was a follow-on action brought after a proposed government consent decree--fairly common in antitrust cases; but, as the FTC Act contains no private right of action and the Sherman Act--which does create such a right--is of doubtful application to a failed attempt to conspire on prices, see note 4, below, Liu's suit rested instead on chapter 93A.  Chapter 93A, like section 5, prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce," Mass. Gen. Laws ch. 93A, § 2(a), but also provides a right of action to consumers and permits class actions.  Id. § 9.

Liu alleged that U-Haul's "intentional and purposeful anticompetitive acts"--pertinently, the invitations to collude and U-Haul's price increases incident to those invitations--caused her to pay at least 10 percent more for two one-way truck rentals than she would have absent U-Haul's unlawful action.  Chapter 93A is limited to transactions connected to Massachusetts, § 1(b); Liu's proposed class included "[a]ll persons who purchased one-way truck

rentals from [U-Haul] for transportation to, from or within . . . Massachusetts between September 2006 and September 2008."

U-Haul filed a motion to dismiss for failure to state a claim, Fed. R. Civ. P. 12(b)(6), which the district court granted in a short written opinion. The district court assumed _arguendo_ that an invitation to collude was actionable under chapter 93A; but it found that Liu had failed plausibly to allege injury, noting that she had failed to "set forth any facts about her own transactions, such as what she paid . . . or what available competitors' rates were at the time." _Liu_ v. _Amerco_, No. 10-11221, slip op. at 1 (D. Mass. Aug. 22, 2011).

Liu has now appealed, contending that her complaint did set forth a claim under chapter 93A and that it adequately alleged injury and should have survived the motion to dismiss. Both issues raise questions of law that are reviewed _de novo_. _Poirier_ v. _Mass. Dep't of Corr._, 558 F.3d 92, 94 (1st Cir. 2009); _United States_ v. _Troy_, 618 F.3d 27, 35 (1st Cir. 2010). But we begin by noting _sua sponte_, as we are required to do, an unaddressed question as to the district court's subject matter jurisdiction.

Diversity of citizenship exists between Liu and the defendants, but there is no likelihood that damages for her two rentals would meet the ordinary requirement for diversity cases that the amount in controversy exceed $75,000. 28 U.S.C. § 1332(a). However, the Class Action Fairness Act of 2005, 28 U.S.C.

§ 1332(d), provides an alternative basis for jurisdiction so long as (1) minimal diversity exists (as it does here) and (2) the amount in controversy for aggregated claims of the whole class exceeds $5 million.  Id.

Liu has limited her class to rentals to, from or within Massachusetts during the period in which U-Haul prices were allegedly elevated.  Questioned by the court at argument, Liu contended that the minimum statutory damages under chapter 93A--$25 per incident (which could potentially be trebled under that statute to $75, Mass. Gen. Laws ch. 93A, § 9(3)-(3A))--would exceed the minimum $5 million figure given the thousands of U-Haul rentals to, from and within Massachusetts that would likely be encompassed by the two year period.[3]

Given the good faith representations by Liu's counsel, which have not been challenged, see Coventry Sewage Assocs. v. Dworkin Realty Co., 71 F.3d 1, 5-6 (1st Cir. 1995), we find the jurisdiction to exist.  Further, the statutory damages are merely a minimum under chapter 93A; conceivably some of the class member rentals were for larger sums; and the 10 percent estimate of damages was seemingly a floor figure rather than a ceiling.  It is

---

[3]Whether prospective attorneys' fees would be included is a question we need not resolve. Spielman v. Genzyme Corp., 251 F.3d 1, 7 (1st Cir. 2001), held that the plaintiff's own fees could be included in a chapter 93A claim but not those of the class; but Spielman was not dealing there with CAFA which looks to aggregated class damages to meet the $5 million threshold.

not clear to a legal certainty that the amount in controversy is less than $5 million.  Id. at 6.  So we proceed to the merits.

The district court's dismissal rested solely on the lack of an adequate allegation of harm--the full, albeit brief, holding is quoted below--but defendants, while agreeing with the court that injury was inadequately alleged, also suggest that the allegations of wrongdoing fail to state a cognizable claim under chapter 93A. We decide both issues in the interest of judicial economy, see New Hampshire Motor Transp. Ass'n. v. Flynn, 751 F.2d 43, 52 (1st Cir. 1984) (Breyer, J.), and begin with the question of whether the alleged acts violate chapter 93A.

As alleged in the complaint, U-Haul is the largest U.S. provider of one-way truck rentals with about 54 percent of the market; Budget is their largest competitor, bringing their joint share to about 70 percent.  But market size and definition would not matter under the antitrust laws if U-Haul's alleged proposal to fix prices had been accepted: U-Haul and Budget compete in truck rentals, and price fixing is a per se offense, United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 223-24 (1940), entailing both criminal and civil liability under section 1 of the Sherman Act, 15 U.S.C. § 1.

Section 1 of the Sherman Act, however, does not condemn an attempt to conspire,[4] nor a <u>solicitation</u> to conspire, <u>compare</u> 18 U.S.C. § 373 (solicitation to commit a crime of violence); there is no general federal attempt statute; and the general solicitation statute, 18 U.S.C. § 2, is violated only if the underlying crime is completed. <u>United States</u> v. <u>Korab</u>, 893 F.2d 212, 213 (9th Cir. 1989). The federal mail and wire fraud statutes, 18 U.S.C. §§ 1341 <u>et seq</u>., have sometimes been deployed against attempted price-fixing, <u>e.g.</u> <u>United States</u> v. <u>Ames Sintering Co.</u>, 927 F.2d 232 (6th Cir. 1990), but have no civil-remedy provisions.

But while such an unsuccessful attempt is not a violation of section 1 of the Sherman Act, section 5 of the FTC Act, 15 U.S.C. § 45(a)(1), embraces unilateral acts by one defendant, <u>FTC</u> v. <u>Brown Shoe Co.</u>, 384 U.S. 316, 322 (1966); a proposal to engage in horizontal price fixing is dangerous merely because of its potential to cause harm to consumers if the invitation is accepted; and the FTC's complaint in this case makes clear that it has

---

[4]Section 2 of the Sherman Antitrust Act, 15 U.S.C. § 2, does cover "attempt[s] to monopolize"; and one circuit court did treat a failed attempt to conspire in a two-carrier market as attempt at "shared" monopolization, <u>United States</u> v. <u>Am. Airlines, Inc.</u>, 743 F.2d 1114 (5th Cir. 1984)--a debatable approach. VI Areeda <u>Antitrust Law</u> ¶ 1407f, at 36-39 (1986).

adopted such a theory.[5]  Nothing said by defendants suggests any obvious flaw in that position.

Chapter 93A's relevant language parallels that of section 5, and the Massachusetts legislature in chapter 93A provided that "[i]t is the intent of the legislature that in construing [the Act] . . . . courts will be guided by the interpretations given by the Federal Trade Commission and the Federal Courts to section 5(a)(1) of the Federal Trade Commission Act . . . ."  Mass. Gen. Laws ch. 93A, § 2(b).  The courts have been thus guided.  In re TJX Cos. Retail Sec. Breach Litig., 564 F.3d 489, 495-97 (1st Cir. 2009); Ciardi v. F. Hoffman-La Roche, Ltd., 762 N.E.2d 303, 309 (Mass. 2002).

Defendants say that there is no Massachusetts decision finding that an unsuccessful attempt to fix prices violates chapter 93A; but naturally precedent is scarce since an unsuccessful attempt rarely causes damages.  Assuming consumer harm were proved (a quite separate question), we would expect Massachusetts courts to follow FTC precedent that sensibly holds unlawful pernicious conduct with a clear potential for harm and no redeeming value

---

[5]FTC Summary, 75 Fed. Reg. at 35034 ("[I]nvitations to collude increase the risk of anticompetitive harm to consumers, and as such, can violate Section 5 of the FTC Act."); see also id. at 35034 n.3 (listing prior FTC actions based on invitations to collude); In re Valassis Commc'ns, Inc., 2006 WL 1367833 (F.T.C. Apr. 19, 2006); In re Stone Container Corp., 125 F.T.C. 853, 854 (1998).

whatever.  In re TJX, 564 F.3d at 497.  If U-Haul did what is alleged, its conduct perfectly fits this paradigm.[6]

The alleged conduct is not mere oligopolistic pricing in which a unilateral price increase is made by a dominant player in the hope that competitors will follow with matching increases. Pure parallel pricing gambits in markets with few competitors are not easily regulated and are not automatically condemned under the Sherman Act.  Theatre Enters., Inc. v. Paramount Film Distrib. Corp., 346 U.S. 537, 540-41 (1954); see generally, VI Areeda, Antitrust Law ¶¶ 1432-33.  What is alleged here are express proposals to a competitor to raise prices, which are unambiguous, more dangerous, and serve no proper purpose.

A spurned attempt to fix prices standing alone would--because spurned--cause no direct harm to consumers.  But here Liu alleged conduct that did not consist merely of unrequited proposals; it included as part of the plan unilateral increases by U-Haul as an indicator of its intentions and a target for increases by competitors.  As alleged, the increases were part of an orchestrated illegal effort to conspire with Budget to raise

---

[6]U-Haul argues that Liu must satisfy the FTC's "consumer injury test" to state a claim for unfairness under Chapter 93A. The test is limited to consumer unfairness claims and does not govern Liu's claim based on an alleged unfair method of competition.  See FTC Policy Statement on Unfairness appended to In re Int'l Harvester Co., 104 F.T.C. 949, 1070-76 (1984).

prices, tainting the U-Haul increases even if Budget failed to follow them.

And if such harm did occur, recovery would not be barred by any notion that the harm was outside of the zone of interests which the statute was meant to protect.  Cf. Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 489 (1977); Atl. Richfield Co. v. USA Petroleum Co., 495 U.S. 328, 334 (1990).  The very reason for chapter 93A to encompass a failed attempt to fix prices is because of the threat that the attempt could result in price increases.  If Liu is correct, the attempt to conspire did result in just such harm.

Rule v. Fort Dodge Animal Health, Inc., 607 F.3d 250 (1st Cir. 2010), cited to us by U-Haul, did not involve an attempt to conspire with a competitor to raise prices; it concerned undisclosed risks.  There, the defendant sold a medicine to prevent canine heartworms and, so far as anyone knows, the medicine did provide such protection to the plaintiff's dog.  Id. at 251-52.  The plaintiff's chapter 93A claim was that the medicine also had an undisclosed capacity to cause harm to the dog, although it was conceded that the medicine had not caused any harm to the plaintiff's dog.  Id.

We concluded that no economic damage had been inflicted on the plaintiff under chapter 93A since plaintiff had gotten the protection sought and had suffered no detriment from the concealed

-12-

latent defect. <u>Rule</u>, 607 F.3d at 254-55. In <u>Rule</u>, disclosure of the defect would not have lowered the price, but would instead have eliminated the product. <u>Id.</u> at 253. Here, by contrast, plaintiff has alleged that the defendants' attempted price fixing scheme directly raised the price charged by U-Haul and paid by Liu-- economic damage by any test.

This brings us to the question whether Liu properly pled enough detail to show damages. The district judge, as already noted, rested his dismissal on the ground that Liu "has failed plausibly to allege an injury." <u>Liu</u>, No. 10-11221, slip op. at 1. The court recognized that Liu had claimed to have undertaken two U-Haul rentals--one from New York to Massachusetts in 2007 and the other an intra-Massachusetts trip in 2008--but then explained why the court deemed this inadequate:

> The plaintiff does not set forth any facts about her own transactions, such as what she paid for her one-way truck rentals or what available competitors' rates were at the time. Even if U-Haul had committed an actionable wrong that had a price-raising effect generally on the national market, the basic facts about the plaintiff's individual transactions are necessary to judge whether she was in fact harmed by those general phenomena. Whether she overpaid, and whether such overpayment was caused by U-Haul's unrequited attempts to collude with Avis Budget Group, Inc., is left entirely to conjecture.

<u>Id.</u> at 1-2.

Causation of damages is required for a chapter 93A claim, Hershenow v. Enterprise Rent-A-Car Co., 840 N.E.2d 526, 532-33 (Mass. 2006); and Liu might (as the district court implied) have compared her rental price with that of Budget for comparable service if she knew what Budget was then charging.  But a comparison is not the only way to show injury; and here Liu-- relying on the FTC's allegations--asserted that U-Haul had raised its own prices and that these "price increases were themselves an essential element of the unlawful effort to collude."

The FTC had already pointed to evidence that Shoen "instructed U-Haul regional managers to raise rates for truck rentals, and then contact Budget to inform Budget of U-Haul's conditional rate increase and encourage Budget to follow," FTC Summary, 75 Fed. Reg. at 35034, and "also instructed local U-Haul dealers to communicate with their counterparts at Budget and Penske, with the purpose of re-enforcing the message that U-Haul had raised its rates, and competitors' rates should be raised to match the increased U-Haul rates."  Id.  These factual assertions were backed by references to specific documents uncovered in the FTC investigation.

The FTC's aim to achieve injunctive relief did not depend on proving price effects, and it pointed to only one written admission of impact: the regional manager in Florida, already mentioned, who reassured senior executives in writing that he had

-14-

implemented the plan. But one may infer that managers and dealers generally did what the head of the company instructed.[7] If this is disputed, the matter can be resolved by evidence of U-Haul's managers and staff in Massachusetts and a review of its records of price changes there.

Additionally, the complaint (1) incorporates a graph of truck rental prices, of which U-Haul is described as a driver because of its large market share, showing a substantial jump of over 40 percent in the index from September 2006 to September 2008 followed by a substantial drop; and (2) describes a study comparing truck rental prices and car rental prices for the same period indicating that truck rental prices markedly diverge upward when compared to car rentals during the two year period of Liu's complaint.

Attributing the greater divergence to U-Haul's actions, Liu says that the economic analysis in the study suggests an overcharge of at least 10 percent. This exercise provides some further grounding for Liu's claim that U-Haul's representatives did increase prices in response to Shoen's directive and that prices remained at a super-competitive level for a considerable period and

_____

[7]A manager might well have balked at calling Budget if the knowledge that price-fixing is a federal felony carrying a jail sentence has spread beyond lawyers. But managers could easily not understand that merely raising prices would be a basis for civil actions under section 5 and chapter 93A if the increases were part of Shoen's plan that the increases be accompanied by calls.

until natural market forces compelled U-Haul to roll them back. Taken with Shoen's instructions, this is hardly a complaint lacking in evidence of damage to Liu.

U-Haul's brief raises fair questions about the power of the analysis--for example, arguing that the indices used for truck rentals are not specific to U-Haul and clearly include rental of buses, truck tractors and semi-trailers in addition to the self-drive trucks mainly deployed by U-Haul and Budget. And U-Haul says it is unclear, and unproved, that passenger car rentals are a good yardstick for comparison, noting that input costs and demand may well vary as between the two industries.

Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), require that facts and not mere generalities be set forth in a complaint, but only enough facts to make the claim plausible, and at this stage reasonable inferences are taken in favor of the pleader. SEC v. Tambone, 597 F.3d 436, 441 (1st Cir. 2010). The place to test factual assertions for deficiencies and against conflicting evidence is at summary judgment or trial; Liu's complaint is not "threadbare or speculative." Peñalbert-Rosa v. Fortuña-Burset, 631 F.3d 592, 595 (1st Cir. 2011).

Of course, the underlying FTC allegations themselves remain to be proved: the consent decree is neither an adjudication nor an admission by U-Haul. But Liu's complaint does recite

specific facts that make her claim plausible; and while damages to Liu are surely modest, class actions for damages that are significant only when aggregated for the class are common.  See Skirchak v. Dynamics Research Corp., 508 F.3d 49, 58 (1st Cir. 2007).  Whether this is a suitable case for a class action is not before us.

The judgment of the district court is vacated and the matter remanded for further proceedings consistent with this decision.  Liu is entitled to costs on the appeal.

It is so ordered.