980 F.2d 739
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Robert GUTSTEIN, Defendant-Appellant.
 No. 91-50704.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 5, 1992.
Decided Nov. 30, 1992.
 
 Before D.W. NELSON, CYNTHIA HOLCOMB HALL and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Robert Gutstein appeals his conviction following a jury trial on charges of securities and wire fraud, and conspiracy to commit securities, wire and bank fraud. Gutstein contends that (1) the evidence presented at trial was insufficient to support his conviction of securities and wire fraud; (2) we must reverse his conspiracy conviction under the Carman rule; (3) the district court erred in admitting certain out of court statements by co-defendant Jacob Rubenstein; and (4) the trial court plainly erred by not giving a specific unanimity instruction regarding the objects of the conspiracy. None of Gutstein's arguments persuade us, and we therefore affirm his conviction.
 
 I. SUFFICIENCY OF THE EVIDENCE
 
 3
 Our task in reviewing whether the evidence presented at trial was sufficient to support Gutstein's conviction of securities and wire fraud is to view all of the evidence in the light most favorable to the prosecution and determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original); United States v. Hernandez, 876 F.2d 774, 777 (9th Cir.), cert. denied, 493 U.S. 863 (1989). This standard is extremely deferential to the jury.
 
 A. The Securities Fraud Conviction
 
 4
 To substantiate its charge that Gutstein committed securities fraud in violation of 15 U.S.C. §§ 78j(b) and 78ff, the government had to prove that Gutstein (1) intentionally or recklessly (2) participated in a scheme to defraud, (3) that the scheme was in connection with the purchase or sale of securities, and (4) that Gutstein directly or indirectly used some means or instrumentality of interstate commerce or the mails, or some facility of a national securities exchange. See 15 U.S.C. § 78j(b) (1988); 17 C.F.R. § 240.10b-5 (1991); S.E.C. v. Rogers, 790 F.2d 1450, 1458 (9th Cir.1986). Regarding scienter requirement, see Hollinger v. Titan Capital Corp., 914 F.2d 1564, 1568-70 (9th Cir.1990), cert. denied, 111 S.Ct. 1621 (1991) (recklessness satisfies scienter element); United States v. Farris, 614 F.2d 634, 638 (9th Cir.1979), cert. denied, Baumann v. United States, 447 U.S. 926 (1980) ("reckless disregard for truth or falsity is sufficient to sustain a finding of securities fraud"); Ernst & Ernst v. Hochfelder, 425 U.S. 185, 194-214 (1976).
 
 
 5
 We conclude that the evidence presented at trial did provide a sufficient basis for a rational jury to find beyond a reasonable doubt in favor of the government on each of the four elements identified above. On appeal, Gutstein does not contest that a criminal scheme to manipulate Magna Technologies securities did exist; rather, he argues that he was not a knowing and willing participant of such a scheme. Essentially, Gutstein's claim is that he was the unwitting dupe of co-defendant Rubenstein (a fugitive at the time of trial), who masterminded the illegal scheme to control Magna stock. Therefore, we need only focus on whether the evidence was sufficient to support a finding that Gutstein intentionally or recklessly participated in the market manipulation scheme.
 
 
 6
 The jury heard a substantial amount of testimony from which it could rationally draw inferences to support a finding beyond a reasonable doubt that Gutstein knew about and was involved in the manipulation scheme. Robert Bonito and Randy Catanese testified to Gutstein's presence at meetings during which Rubenstein described his "smoke and mirrors" plan to manipulate Magna stock, and to Gutstein's acknowledgment of and assent to Rubenstein's statements. Bonito and Catanese also described Gutstein's disregard of their warnings to Gutstein to disengage himself from the illegal scheme. Michael Giuffre testified to his refusal of Gutstein's request that he add substantial assets to Magna's financial statements, and Gutstein's failure to provide supporting documentation of those assets. Manny Cuizon testified to Gutstein's involvement in the preparation of false press releases. And a number of witnesses provided considerable testimony from which a jury could conclude Magna was not a viable company.
 
 
 7
 In addition, a rational jury could conclude that Robyn Bennett purchased Magna stock through Norbay Securities and Eppler, Guerin & Turner on behalf of Gutstein, for the purpose of artificially supporting the market price of Magna shares. Bennett testified that Gutstein asked her to purchase the stock, and that he discussed with her the need to shore up the market price by doing so. Gutstein admitted on cross-examination that he knew that Bennett did not have the funds with which to make these purchases, thus the jury certainly could have concluded that Gutstein was not simply offering Bennett investment advice. Where Bennett's testimony conflicts with Gutstein's, we must defer to the jury's decision to believe Bennett.
 
 
 8
 Furthermore, Frank Harrison testified that during their September 25, 1985, telephone conversation, Gutstein told Harrison that Bennett had the money to pay for her purchase through Eppler, Guerin. Harrison also testified that in a later telephone conversation, Gutstein indicated that he would wire money to Eppler, Guerin to cover the Magna stock purchase in Bennett's name; the firm never received any funds to pay for the Bennett purchase. Based upon this evidence, a rational jury could conclude that Gutstein intentionally deceived Harrison in order to implement the scheme to artificially inflate the market price of Magna shares. Harrison stated at trial that had he known Bennett could not pay for the shares she purchased, he would have sold the stock immediately.
 
 
 9
 As this brief summary of the evidence suggests, sufficient evidence was presented at trial to support a rational jury's determination beyond a reasonable doubt that Gutstein intentionally or recklessly participated in a scheme to manipulate Magna stock.
 
 
 10
 The facts of this case contrast sharply with United States v. Mulheren, 938 F.2d 364 (2nd Cir.1991), which Gutstein cites to support his argument that the jury had insufficient evidence upon which to find Gutstein guilty of securities fraud. Mulheren was a corporate outsider whose purchase of Gulf & Western securities could have had real investment value. The only evidence supporting an inference that Mulheren purchased the securities solely to raise their price rather than to invest was a single cryptic conversation. Id. at 369-370. The only material similarity between the two cases is that both Mulheren and Gutstein lost money as a result of the alleged schemes. Though the fact that Gutstein lost money demonstrates that one particular indicia of market manipulation (i.e., pecuniary gain) is absent in this case, this fact does not overwhelm the evidence discussed above.
 
 B. The Wire Fraud Conviction
 
 11
 To establish that Gutstein committed wire fraud in violation of 18 U.S.C. § 1343, the government had to prove the following essential elements: (1) a scheme to defraud or obtain money or property by false pretenses, representations, or promises; and (2) knowing use of interstate wire communication to further the scheme. 18 U.S.C. § 1343 (1988); United States v. Bernhardt, 840 F.2d 1441, 1446 (9th Cir.), cert. denied, McCarthy v. United States, 488 U.S. 954 (1988); United States v. Ames Sintering Co., 927 F.2d 232, 234 (6th Cir.1990).
 
 
 12
 A rational jury undoubtedly could find that the testimonial and documentary evidence provided by Harrison concerning his September 25, 1985, and September 28, 1985, telephone conversations with Gutstein proves the second element of the offense. Moreover, the same amalgam of evidence, discussed above, which we find sufficient to support the jury's conviction of Gutstein on the securities fraud counts, we also find sufficient to support the wire fraud conviction. We conclude that a rational jury could find beyond a reasonable doubt that Gutstein participated in a scheme to manipulate Magna stock that involved both securities fraud and wire fraud.
 
 II. CONSPIRACY CONVICTION
 
 13
 Gutstein's second contention is that United States v. Carman, 577 F.2d 556 (9th Cir.1978), requires us to reverse his conviction of conspiracy in violation 18 U.S.C. § 371. The conspiracy charge against Gutstein listed three illegal objects: securities fraud, wire fraud and bank fraud. Gutstein argues that we must overturn his conspiracy conviction because the district court dismissed the substantive bank fraud counts against him for insufficiency of evidence, yet instructed the jury that it could convict him on the conspiracy charge if it found any of the three objects, including the bank fraud.
 
 
 14
 We reject Gutstein's argument. First, the Carman rule expressly limits itself to circumstances where one of the alleged objects of a conspiracy is based on a substantive count which fails to state a crime. Carman, 577 F.2d at 566-68 ("the conspiracy conviction is immune from attack on appeal so long as no substantive count conviction is overturned because the count failed to state a crime," emphasis in original). In this case, none of the alleged objects failed to state a crime. Second, in Griffin v. United States, 112 S.Ct. 466, 472-74 (1991), the Supreme Court squarely addressed the question we face here--whether a general guilty verdict on a multiple-object conspiracy charge must be set aside if the evidence is insufficient to support conviction on one of the objects. The Court answered with an unqualified 'no'.
 
 III. ADMISSION OF RUBENSTEIN'S STATEMENTS
 
 15
 Gutstein next asserts that we must reverse his conspiracy conviction because the district court erroneously admitted testimony relating certain statements by co-defendant Rubenstein. Gutstein did not object to this evidence at trial, therefore we review its admission for plain error. United States v. Gomez-Norena, 908 F.2d 497, 501 (9th Cir.), cert. denied, 111 S.Ct. 363 (1990).
 
 
 16
 We conclude that both statements at issue are admissible nonhearsay under the co-conspirator statements exclusion in Federal Rule of Evidence 801(d)(2)(E). In order for statements of a co-conspirator to qualify under this Rule, "[t]here must be evidence that there was a conspiracy involving the declarant and the nonoffering party, and that the statement was made 'during the course and in furtherance of the conspiracy,' " Bourjaily v. United States, 483 U.S. 171, 175 (1987). In this case, the statements themselves, and the fact that they were made in Gutstein's presence without any disavowal on his part, indicate the existence of a conspiracy in which both Rubenstein and Gutstein participated. Id. at 180 ("a co-conspirator's statements could themselves be probative of the existence of a conspiracy and the participation of both the defendant and the declarant in the conspiracy"). Further, considering the evidence presented at trial, a reasonable jury could not have convicted Gutstein on the substantive securities and wire fraud counts without finding there existed a conspiracy involving both Rubenstein and Gutstein.
 
 
 17
 Gutstein argues that neither statement was made "in furtherance" of the conspiracy to manipulate Magna stock, and that neither therefore fits within the co-conspirator exclusion. We disagree. Rubenstein's statement that he would "pump" the value of Magna shares through the use of "mirrors" clearly furthered the conspiracy by explaining its objectives and how they would be achieved, and by inducing the participation of other conspirators. United States v. Layton, 720 F.2d 548, 556-57 (9th Cir.1983), cert. denied, 465 U.S. 1069 (1984). This statement, in the context in which it was made, was not mere conversation or narration of past events, nor was it a casual admission. Id; United States v. Nazemian, 948 F.2d 522, 529 (9th Cir.1991), cert. denied, 61 U.S.L.W. 3258 (U.S., Oct. 5, 1992).
 
 
 18
 Likewise, Rubenstein's statement that he would be able to use smoke and mirrors to raise the market price of the stock of Arabian Racing Industries ("ARI"), a company affiliated with Rubenstein and Gutstein, was admissible for the same reasons. Though this statement did not refer to Magna, it appears to have been made at a time when the conspirators were hatching their scheme but had not yet picked the company through which they would effectuate it. However, even if the statement concerning ARI stock was not in furtherance of the conspiracy charged, its admission was not highly prejudicial; the jury properly heard testimony relating the very same type of statements by Rubenstein in Gutstein's presence in reference to Magna stock. The ARI statement did not reveal any incriminating evidence not otherwise properly revealed.
 
 IV. SPECIFIC UNANIMITY INSTRUCTION
 
 19
 Finally, Gutstein contends that we should reverse his conspiracy conviction because the trial judge did not instruct the jury to reach unanimous agreement on which of the alleged objects was the actual object of the conspiracy. As the government points out, this argument essentially is Gutstein's Carman argument in a different guise--an argument which Griffin conclusively rejects.
 
 
 20
 Furthermore, because Gutstein did not request a specific unanimity instruction at trial nor object to the instruction actually given, we review the district court's instruction for plain error. United States v. Powell, 932 F.2d 1337, 1341 (9th Cir.), cert. denied, 112 S.Ct. 256 (1991) (plain error is highly prejudicial error affecting substantial rights). It is the exceptional case in which a court's failure to sua sponte offer a specific unanimity instruction constitutes plain error. Such error may exist where a genuine possibility of juror confusion is present due to the complexity of the evidence or some other factor indicating that different jurors may have found different facts. United States v. Anguiano, 873 F.2d 1314, 1319-21 (9th Cir.), cert. denied, 493 U.S. 969 (1989). Gutstein points to no real indication of juror confusion in this case, and does not substantiate his bald assertion that the evidence was extremely complex. In the circumstances of this case, we do not see how the absence of such an instruction could be highly prejudicial.
 
 
 21
 The judgment of the district court is AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3