86 F.3d 1162
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Robert Arthur GUTSTEIN, aka: Robert A. Gutstein, aka:
Robert Gutstein, Petitioner-Appellant,
v.
UNITED STATES of America, Respondent-Appellee.
 No. 95-56216.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 6, 1996.
Decided May 17, 1996.
 
 Before: HALL, O'SCANNLAIN, and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Robert Gutstein appeals the district court's denial of his habeas corpus petition in which he alleged that he received ineffective assistance of counsel in his criminal trial on conspiracy, securities fraud, wire fraud, and bank fraud charges. We affirm.
 
 
 3
 * In order to obtain relief on the grounds that he received ineffective assistance of counsel, Gutstein must first prove that his counsel, Joel Levine's performance was "deficient." Strickland v. Washington, 466 U.S. 668, 687 (1984). "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. We conclude that Gutstein has failed to make the required showing. Indeed, the fact that Gutstein was acquitted on the majority of the charges against him and received a lenient sentence strongly suggests that his counsel's performance was not "deficient." See, e.g., De Roche v. United States, 337 F.2d 606, 607 (9th Cir.1964) ("[T]he record clearly shows no impairment of the right [to effective counsel] falling below constitutional standards. To the contrary, De Roche was acquitted on two of the three counts.").
 
 
 4
 More specifically, we are not persuaded by any of Gutstein's specific allegations of error. First, we find no error in the decision not to call Herb Stone as a witness. Not only is Stone's unsigned affidavit insufficient to support Gutstein's argument that Stone would testify as Gutstein states that he would, Levine's own declaration explicitly states that his decision not to call Stone to the stand was a "tactical and strategic one." Levine apparently believed that "Stone's testimony would tend to show that Gutstein was more involved in buying and selling of Magna stock than would be helpful to the defense." As this court has previously noted, "[a] tactical decision by counsel with which the defendant disagrees cannot form the basis of a claim of ineffective assistance of counsel." Guam v. Santos, 741 F.2d 1167, 1169 (9th Cir.1984) (citing Strickland ).
 
 
 5
 Second, we reject Gutstein's argument that Levine erred by (1) failing to use (a) Bob McGiboney's SEC deposition and (b) a taped telephone conversation between McGiboney and Frank Harrison to impeach Harrison's testimony, and (2) failing to call Bob McGiboney to the stand as a witness. In particular, we note that McGiboney does not explicitly state, in either the SEC deposition testimony or the transcript of the telephone call, that he placed Robyn Bennett's order. Moreover, in other portions of his testimony McGiboney twice explicitly denied placing any order for Bennett. As such, we conclude that Levine did not err in attempting to impeach Harrison with this testimony.
 
 
 6
 Third, we find no error in Levine's alleged failure to investigate and use Harrison's and EGT's alleged violations of state "blue sky" laws. Not only are these alleged violations irrelevant to the issue of appellant's guilt on the wire fraud, securities fraud, and conspiracy convictions, we are also not persuaded by Gutstein's argument that Levine could have somehow used the fact of these violations to impeach Harrison's testimony.
 
 
 7
 Fourth, in light of (1) Gutstein's failure to proffer evidence showing that Robyn Bennett would have testified to such alleged facts as her affair and drug use with Rubenstein, and (2) Levine's declaration that he had no recollection of Gutstein informing him about such alleged facts, we find no error in Levine's alleged failure adequately to impeach Bennett.
 
 
 8
 Fifth and finally, we reject Gutstein's argument that the wire and securities fraud statutes contain a "victim requirement," and that because of EGT's and Harrison's "blue sky" violations, he could not, as a matter of law, have been convicted of wire and securities fraud.
 
 
 9
 As to the wire fraud, this court has held that "[t]o allege a violation of the wire and mail fraud provisions, we have required only that the government show that there is (1) a scheme to defraud, (2) a use of the mails or wires in furtherance of the scheme, and (3) a specific intent to deceive or defraud." United States v. Bonallo, 858 F.2d 1427, 1433 (9th Cir.1988) (citation omitted). In addition, "[i]t is well established that: [i]n a prosecution under 18 U.S.C. § 1343 ... the prosecution need not prove that the scheme was successful or that the intended victim suffered a loss or that the defendant secured a gain." United States v. Louderman, 576 F.2d 1383, 1387 (9th Cir.) (citation, internal quotation omitted), cert. denied, 439 U.S. 896 (1978). Accordingly, Gutstein's argument that he could not have been convicted of wire fraud, because the government did not prove that his conduct created a "victim" who had a right to recover for damage to his or her property rights, necessarily fails.
 
 
 10
 Similarly, to convict a defendant for securities fraud under 15 U.S.C. § 78j(b), 15 U.S.C. § 78ff and 17 C.F.R. § 240.10b-5 (Rule 10b-5), the government must prove that the defendant: (1) willfully and knowingly;[1] (2) employed any device, scheme or artifice to defraud, or made any untrue statement of a material fact or omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or engaged in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person; (3) in connection with the purchase or sale of any security; (4) by using or employing any means or instrumentality of interstate commerce, the mails, or any facility of any national securities exchange. Accordingly, we reject Gutstein's argument that the government had to also prove that there was a "victim" capable of suing for damages in order to prosecute Gutstein for securities fraud.
 
 
 11
 In sum, Gutstein has failed to demonstrate that Levine's performance was "deficient" under Strickland. To the contrary, we conclude that Levine's performance far exceeded the constitutional minimums.
 
 II
 
 12
 In addition to showing that Levine's performance was constitutionally "deficient," Gutstein "must [also] show that the deficient performance prejudiced the defense." Strickland, 466 U.S. at 687. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. Even if we were to find that Levine's performance was constitutionally "deficient," Gutstein has failed to demonstrate that he was prejudiced by any of Levine's alleged errors.
 
 
 13
 In particular, we note the existence of substantial evidence in support of Gutstein's conviction which was not affected by any of Levine's alleged errors. As this court noted,
 
 
 14
 The jury heard a substantial amount of testimony from which it could rationally draw inferences to support a finding beyond a reasonable doubt that Gutstein knew about and was involved in the manipulation scheme. Robert Bonito and Randy Catanese testified to Gutstein's presence at meetings during which Rubenstein described his "smoke and mirrors" plan to manipulate Magna stock, and to Gutstein's acknowledgment of and assent to Rubenstein's statements. Bonito and Catanese also described Gutstein's disregard of their warnings to Gutstein to disengage himself from the illegal scheme. Michael Giuffre testified to his refusal of Gutstein's request that he add substantial assets to Magna's financial statements, and Gutstein's failure to provide supporting documentation for those assets. Manny Cuizon testified to Gutstein's involvement in the preparation of false press releases. And a number of witnesses provided considerable testimony from which a jury could conclude Magna was not a viable company.
 
 
 15
 United States v. Gutstein, No. 91-50704, 1992 WL 354151 at ** 2 (9th Cir. Nov. 30, 1992) (unpublished disposition). As the government correctly points out, appellant "makes no claim that Robert Bonito, Randy Catanese, Manny Cuizon, Michael Giuffre, or any of the witnesses who testified that Magna was not a viable company could have been further impeached."
 
 
 16
 In sum, even assuming arguendo that Levine committed certain "errors," we are not persuaded that Gutstein has failed to show that he was deprived of a fair trial.
 
 III
 
 17
 For the foregoing reasons, we affirm the district court's denial of Gutstein's habeas petition.[2]
 
 
 18
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 This court has also affirmed convictions in cases in which the district court applied a mens rea of recklessness. See United States v. Farris, 614 F.2d 634, 638 (9th Cir.1979), cert. denied, Baumann v. United States, 447 U.S. 926 (1980)
 
 
 [2]
 Because Gutstein's "motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," 28 U.S.C. § 2255, Gutstein was also not entitled to an evidentiary hearing, and the district court did not abuse its discretion in not holding one