**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Danielle FACCHINI, Mark D. East, John C. Clinton, Thomas P. Croman, Anthony Horst, Robert Finley, Roger W. Richardson, Clifford W. Lloyd, Paul Clark, Katherine L. Richardson, Dana S. Rake, Cynthia Hoofard, Steven M. Job, Josephine G. Booth, David M. Hartzell, Philip Jackson, Joe L. Stephens, Gordon Weller, Thomas A. Peterson, Michael A. Pangle, David Hoffman, Carolyn A. Jackson, Richard T. Salas, Crystal L. Jones, Daniel L. Maher, Deanne Smith, Eddie Leo Card, Rick S. Reifenrath, and Jonathan Geissel, Defendants–Appellants.**

Nos. 86–3094, 86–3097 to 86–3099, 86–3101, 86–3102, 86–3104 to 86–3111, 86–3117, 86–3118, 86–3121, 86–3123, 86–3128, 86–3137 to 86–3140, 86–3148, 86–3122, 86–3154, 86–3161, 86–3177 and 86–3100.

United States Court of Appeals, Ninth Circuit.

Argued En Banc and Submitted Nov. 17, 1988.

Decided May 9, 1989.

Frank Noonan, Asst. U.S. Atty., Portland, Or., for plaintiff-appellee.

Steven T. Wax, Federal Public Defender, Portland, Or., for defendants-appellants (all defendants except Geissel).

Marc D. Blackman, Ransom, Blackman & Simson, Portland, Or., for defendant-appellant Jonathan Geissel.

Before GOODWIN, TANG, SCHROEDER, FLETCHER, PREGERSON, ALARCON, POOLE, BEEZER, WIGGINS, NOONAN and THOMPSON, Circuit Judges.

PREGERSON, Circuit Judge:

Ms. Facchini and the other appellants were convicted of violating 18 U.S.C. § 1001 (1982), which prohibits a person from making materially false statements in a matter within the jurisdiction of a federal department or agency. We took this case en banc to determine whether the extent of federal involvement in a state unemployment insurance program justifies imposing federal criminal liability under section 1001 on claimants who made misrepresentations on applications for *state* unemployment benefits. We must also determine whether

other claimants who received *federal* unemployment benefits as a result of false statements made to state unemployment officials can be held criminally liable under section 1001.

BACKGROUND

The facts are not in dispute. Appellants applied to the Oregon Division of Employment for unemployment insurance benefits. They made false statements on initial or supplemental claim forms. As a result, they improperly received unemployment benefits. With regard to the source of the benefits, the appellants fall into two distinct categories. Most of the appellants ("first group") received only benefits paid by the State of Oregon. Four of the appellants ("second group") however, received federal compensation under a federal supplemental benefits program.[1]

The appellants were indicted for violation of section 1001. They moved to dismiss the indictment on the grounds that the matters were not within the jurisdiction of a federal agency or department and that the false statements were not material. Upon denial of the motion, the appellants conditionally pleaded guilty under Fed.R.Crim.P. 11(a)(2),[2] reserving the right to appeal the denial of their motion to dismiss.

On appeal, a panel of this court affirmed the appellants' convictions, finding that "[t]he scope of § 1001 ... follows the federal government's access to information." *United States v. Facchini*, 832 F.2d 1159, 1161 (9th Cir.1987), *vacated*, 851 F.2d 1221 (9th Cir.1988) (citing *Bryson v. United States*, 396 U.S. 64, 71, 90 S.Ct. 355, 359, 24 L.Ed.2d 264 (1969)).

ANALYSIS

1. UNEMPLOYMENT INSURANCE

Before deciding the issues presented by this appeal, we must first examine the relationship between the two unemployment insurance programs—state and federal—involved here. The first group of appellants received cash payments from an Oregon unemployment insurance program. The Oregon program was established under the federal unemployment compensation system created by Congress in 1935. Or.Rev. Stat. §§ 657.005 *et seq.* (1987); 49 Stat. 626 (codified at 26 U.S.C. §§ 3301 *et seq.* (1982 & Supp. IV 1986)). The federal scheme permits a state to operate its own program, provided the Secretary of Labor (the "Secretary") approves the state's unemployment plan. 26 U.S.C. § 3304. Of critical importance to our inquiry is this fact: when a state operates a federally-approved program under section 3304, not one cent of federal money goes to pay the unemployment benefits. *See* Or.Rev.Stat. §§ 657.815(3) (providing that the state benefit fund is the sole and exclusive source for the payment of benefits under the Oregon unemployment insurance program). Thus, Oregon footed the entire bill for the benefits received by the first group of appellants.

Even when a state such as Oregon runs its own unemployment insurance program, there is federal involvement beyond the initial approval of the state plan. Under 42 U.S.C. § 502(a) (Supp. IV 1986), the federal government provides funds for "the proper and efficient administration" of state unemployment insurance laws. The Secretary monitors the operation of the state plan and may stop payment of administrative funds if the state fails properly to administer its unemployment insurance laws. 42 U.S.C. § 503(b) (1982). Thus, the federal government does play a limited role in a state's unemployment insurance program, but this role does not extend beyond administrative assistance.

The situation is somewhat different with respect to the second group of appellants. These appellants received compensation under a federal program established to provide federal funds for states to pay up to twenty-six weeks of additional unemployment compensation to persons exhausting their compensation rights under an existing

---

**1.** The four appellants receiving federal benefits were: Paul E. Clark, Robert Finley, David Hoffman, and Richard T. Salas.

**2.** All but four of the appellants (Carolyn A. Jackson, Michael A. Pangle, Richard T. Salas, and Deanna Smith) pleaded guilty to a lesser misdemeanor charge under 18 U.S.C. § 641.

state program. *See* Federal Supplemental Compensation Act of 1982, Pub.L. No. 97–248, 96 Stat. 702 (codified at 26 U.S.C. § 3304 note); *see also* Emergency Unemployment Compensation Act of 1974, Pub. L. No. 93–572, 88 Stat. 1869 (codified at 26 U.S.C. § 3304 note). In contrast to Oregon's unemployment insurance program, benefits received under this program are paid out of the federal purse. We now address the elements of section 1001 relevant to this case.

## 2. SECTION 1001 JURISDICTION

Section 1001 states in full:

Whoever, in any matter within the *jurisdiction* of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a *material* fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

(emphasis added). There can be no valid conviction under section 1001 unless both jurisdiction and materiality are shown. *See United States v. Green*, 745 F.2d 1205, 1208 (9th Cir.1984), *cert. denied*, 474 U.S. 925, 106 S.Ct. 259, 88 L.Ed.2d 266 (1985).

To satisfy section 1001's jurisdiction requirement, the false statement must concern the "authorized functions of an agency or department" rather than "matters peripheral to the business of that body." *United States v. Rodgers*, 466 U.S. 475, 479, 104 S.Ct. 1942, 1946, 80 L.Ed.2d 492 (1984). "A department or agency has jurisdiction, in this sense, when it has the power to exercise authority in a particular situation." *Id.*

Even though there may be jurisdiction under section 1001 when the false statement is not made directly to a federal agent, *United States v. Kraude*, 467 F.2d 37, 38 (9th Cir.), *cert. denied*, 409 U.S. 1076, 93 S.Ct. 684, 34 L.Ed.2d 664 (1972), and when the federal agency is not affect-

ed financially by the false statement, *United States v. Gilliland*, 312 U.S. 86, 91–93, 61 S.Ct. 518, 521–22, 85 L.Ed. 598 (1941), courts have refused to find jurisdiction unless a direct relationship obtains between the false statement and an authorized function of a federal agency or department. For example, in *Rodgers*, the Supreme Court found section 1001 jurisdiction where the defendant's false statements to FBI agents disrupted the FBI's statutorily authorized function of detecting and prosecuting crimes against the United States. 466 U.S. at 479–81, 104 S.Ct. at 1946–47. Moreover, in *United States v. Balk*, 706 F.2d 1056, 1059 (9th Cir.1983), section 1001 jurisdiction was found where falsified welder certifications were used to obtain work as a Navy contractor because the certifications related directly to the Navy's authority to hire contractors. Other such examples include: *Bryson*, 396 U.S. at 70–71, 90 S.Ct. at 359–60 (defendant's false affidavit related directly to the functioning of the National Labor Relations Board); *United States v. Wolf*, 645 F.2d 23, 25 (10th Cir. 1981) (defendant's false certification of fuel oil as crude oil impinged directly upon the Department of Energy's statutory function of regulating oil products). *See also United States v. Cartwright*, 632 F.2d 1290, 1292–93 (5th Cir.1980) (finding section 1001 applicable to false statements by officer of a wholly-owned subsidiary of an institution insured by the Federal Savings and Loan Insurance Corporation because the FSLIC is authorized to monitor its insureds so as to prevent financial difficulties and the business dealings of the subsidiary have a "profound effect" on the health of the parent).

■ In the instant case, no such direct relation exists between the first group's false statements and an authorized function of the Department of Labor. 42 U.S. C. § 502(a) imposes upon the Secretary the duty to certify the payment of administrative funds to approved state unemployment insurance programs. Under section 503(a), before the Secretary is authorized to certify payment of such funds, he must review the state's laws and find, *inter alia*, (1)

provisions for "[s]uch methods of administration ... as are ... reasonably calculated to insure full payment of unemployment compensation when due"; and (2) provisions making "available upon request" statistical information about recipients of unemployment compensation. 42 U.S.C. §§ 503(a)(1), (7) (1982 & Supp. IV 1986). Thus, the Secretary is authorized to monitor only the administrative structure of the state program to determine whether it complies with federal requirements. The Secretary is not authorized to monitor the actual operation of the state program. Furthermore, the Secretary does not have the authority to withhold certification of federal administrative funds even if a state pays fraudulent claims.[3] Thus, fraudulent claims by an applicant for state unemployment benefits cannot *pervert* the Secretary's function of monitoring the legal structure of a state's unemployment insurance program. *See Rodgers*, 466 U.S. at 480, 104 S.Ct. at 1946 (" 'The [1934] amendment [to 18 U.S.C. § 1001, formerly 18 U.S.C. § 80] indicated the congressional intent to protect the authorized functions of governmental departments and agencies from the perversion which might result from the deceptive practices described.' ") (quoting *Gilliland*, 312 U.S. at 93, 61 S.Ct. at 522); *see also United States v. Stanford*, 589 F.2d 285, 297 (7th Cir.1978), *cert. denied*, 440 U.S. 983, 99 S.Ct. 1794, 60 L.Ed.2d 244 (1979). Because the Secretary is not empowered to act on the fraudulent claims of applicants for state unemployment benefits, such claims do not fall within the jurisdictional reach of section 1001. *See Rodgers*, 466 U.S. at 479, 104 S.Ct. at 1946 (defining "jurisdiction" as "the power to exercise authority in a particular situation").

This en banc decision rejects the position advanced initially by the government that the scope of jurisdiction for section 1001 purposes follows the federal government's access to information. Mere access to information is not enough to establish jurisdiction. To establish jurisdiction, the information received must be directly related to an authorized function of the federal agency. Otherwise, the scope of section 1001 jurisdiction would be virtually limitless.

In this case, the federal government does have statutory access to information contained in the appellants' false statements. Under 42 U.S.C. § 503(a)(7) the Secretary is precluded from certifying any state unemployment insurance program unless state law makes information about benefit claimants available to the federal government. Such statements, however, are *peripheral* to the Secretary's monitoring function because, as we noted, the Secretary is not authorized to act in response to false statements made to a state unemployment insurance program. *See* 20 C.F.R. § 601.5(a) (authorizing the Secretary to act when a state improperly denies benefits but not when a state improperly provides benefits). The federal interest in such statements is, therefore, indirect and *de minimis*.

The government contends that case law sustaining the application of section 1001 to fraudulent claims for benefits under state-operated Aid to Families with Dependent Children ("AFDC") programs supports the application of section 1001 to state-operated unemployment compensation programs. *See, e.g., Stanford*, 589 F.2d at 196–98; *infra* note 4. A comparison of the federal legislation establishing unemployment insurance programs with the legislation establishing AFDC programs, however, points to the opposite conclusion.

The AFDC statutes and regulations specifically define eligibility requirements for AFDC claimants, *see, e.g.,* 42 U.S.C. § 602 (1982 & Supp. IV 1986); no such eligibility provisions can be found in the federal legislation providing grants to states for unemployment compensation administration. *See* 42 U.S.C. §§ 501 *et. seq.* (1982 & Supp. IV 1986). More importantly, the Department of Health and Human Services is specifically authorized to reduce federal

---

**3.** *See* 20 C.F.R. § 601.5(a) (1988) (providing eight circumstances under which the Secretary can withhold federal administrative funds from a state unemployment insurance program, including the circumstance in which the state has improperly denied benefits in a substantial number of cases).

funding to a state AFDC program if that state makes payments to ineligible applicants. 45 C.F.R. § 205.42 (1987). In contrast, the Secretary, as we noted above, is not authorized to withhold federal administrative funds from a program that pays out benefits not due under state law. *See* 20 C.F.R. § 601.5(a). Thus, implicit in the unemployment insurance scheme, as opposed to the AFDC scheme, is a congressional intent to have the states themselves police their payments of unemployment benefits.

The application of section 1001 to statements made on state claim forms and submitted to a state agency to obtain state-funded benefits would extend federal criminal liability for false statements beyond any established precedent. Moreover, such an extension is not consistent with the federalism concerns implicit in the congressional scheme establishing state unemployment insurance programs. Accordingly, we find that the false statements of the first group do not satisfy section 1001's jurisdictional requirement.

█ In contrast, there is little question that the false statements by the second group do satisfy section 1001's jurisdictional requirement. First, the Federal Supplemental Compensation Act of 1982 explicitly provides that any applicant making false statements in an application for federal supplemental benefits is subject to prosecution under section 1001. Section 606(a)(1)(B), 26 U.S.C. § 3304 note.[4] Second, because their false statements gained them benefits paid out of the federal fisc, there is a direct relation between the falsity of those statements and the Department of Labor's statutory function of certifying the payment of federal money for unemployment compensation. *See id.* at § 604(a)(2). For these reasons, we find that the false statements made by the second group satisfy section 1001's jurisdictional requirement.[5]

## 3. MATERIALITY

Section 1001's materiality requirement is closely related to its jurisdiction requirement. "A statement is considered material if it has the propensity to influence agency action; actual influence on agency action is not an element of the crime." *United States v. Vaughn,* 797 F.2d 1485, 1490 (9th Cir.1986).

The vacated *Facchini* panel opinion stated that "[m]ateriality ... is not measured by effect or magnitude." *Facchini,* 832 F.2d at 1162. It is important, however, to distinguish between actual and potential effects. In *United States v. Valdez,* we said that "[t]he government has the burden of proving that the false statement has the intrinsic capability of *influencing or affecting* the agency's or department's decision." 594 F.2d 725, 728 (9th Cir.1979) (emphasis added). Thus, although materiality may be found in the absence of any actual effect of the false statement on a federal agency, still the statement must be capable of having some non-trivial effect on a federal agency. In other words, to assess intrinsic capability, a court must consider whether a statement could, under some set of foreseeable circumstances, significantly affect an action by a federal department or agency.

**4.** The Federal Supplemental Act of 1982 expired *ex proprio vigore* on March 31, 1985. The convictions of the second group of appellants were based on false statements made in 1984.

**5.** Our finding here is consistent with the treatment accorded claimants who have made fraudulent statements to obtain federal AFDC and food stamp benefits. In such cases, courts have upheld the application of section 1001, finding the false statements to be within the jurisdiction of the Secretary of Health, Education and Welfare for purposes of section 1001. In *Stanford,* 589 F.2d at 296–98, the defendants appealed their convictions under section 1001 for obtaining food stamps and AFDC benefits on the basis of false statements made to the Illinois Department of Public Aid. Even though the defendants did not make any false statements directly to the federal government and may not have known of federal involvement in the Illinois state assistance program, the court found section 1001's jurisdictional requirement satisfied because federal funds paid for the benefits and the federal agencies involved had "the ultimate authority to see that the federal funds are properly spent." *Id.* at 297; *see also United States v. Lewis,* 587 F.2d 854, 856 (6th Cir.1978) (per curiam).

The false statements of the first group lacked any intrinsic capability to influence action by the Department of Labor. Because they understated their income on forms submitted to the Oregon Division of Employment, these appellants received additional benefits paid entirely by the State of Oregon. The federal government's role in the Oregon program was limited, as we noted above, to providing administrative funds. The government has not offered any evidence to contradict appellants' evidence that such misstatements neither increased nor had the propensity to increase the federal government's expenditure of funds for administrative expenses.[6] We are forced to conclude that the effect, actual or potential, of misstatements by any single appellant on the federal government's limited administrative role is negligible. Therefore, such misstatements cannot satisfy section 1001's materiality requirement.

In contrast, the false statements of the second group resulted in the improper disbursement of federal funds to these appellants. Given this direct causal link between their statements and action by the Department of Labor, we find that the false statements by the second group are material within the meaning of section 1001.

CONCLUSION

The four appellants who fraudulently obtained federally-funded benefits under the Federal Supplemental Compensation Act of 1982 fall well within the scope of 18 U.S.C. § 1001 because their misrepresentations perverted an authorized function of the Department of Labor. Their convictions are affirmed.

We cannot, however, affirm the convictions of the appellants who received benefits solely from the State of Oregon. The application of section 1001 to individuals who have made false statements on state claim forms submitted to a state unemployment office to obtain state-funded benefits would constitute an unprecedented expansion of the scope of federal criminal law. Accordingly, we conclude that the false statements by the first group do not fall within the jurisdiction of a federal agency or department. We also conclude in the alternative that such statements do not satisfy section 1001's materiality requirement.

AFFIRMED IN PART (86–3106, 86–3102, 86–3138, 86–3140) and REVERSED IN PART as to all other appellants.

ALARCON, Circuit Judge, specially concurring in the judgment:

I concur in the conclusion reached by the majority that the district court erred in denying the motion to dismiss the indictment against those appellants who did *not* receive supplemental federal funds in payment of unemployment benefits. I write separately because I am persuaded that prosecution of the appellants who received only state funds under 18 U.S.C. § 1001 (1982) is in violation of the notice requirement of the due process clause. I concur in the judgment affirming the district court's order denying the motion to dismiss the indictment as to those appellants who received supplemental federal funds after they had exhausted their right to receive state funds under the Oregon unemploy-

**6.** The testimony of Glen Horsmann, Manager of the Audit Investigation Unit of the Oregon Unemployment Division, indicated that fraudulent claims had no impact on federal expenditures:

Q  Mr. Horsmann, with respect to the payment by the federal government of the administrative expenses of the agency that payment is predicated on the number of claims that are filed during that prior year?
A  That's right.
Q  And that payment is predicated on the total number of claims?
A  Right.

Q  And that payment would be predicated in part on whatever number of fraudulent claims were filed during the prior year?
A  I am not sure.
Q  In other words, the total number of claims?
A  On the total number of claims?
Q  Yes. Whether the claims are fraudulent or not has no bearing on the amount of money that the federal government would compensate the state?
A  Right.
Q  It's the total amount?
A  Right.
R.T. at 52–53 (CR No. 85–238 RE).

ment insurance program because Congress expressly provided that the giving of false information under such circumstances was a violation of section 1001.

The facts are quite simple. Each appellant applied to the Oregon Division of Employment for unemployment insurance benefits. Each appellant received such benefits after making false statements on forms provided to them by the Oregon Division of Employment. No actual notice was given to any appellant that the making of a false statement in an application for state unemployment insurance benefits would subject the applicant to *federal* prosecution.

Each appellant was indicted under 18 U.S.C. § 1001. Section 1001 provides as follows:

> Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

Section 1001 does not on its face give notice to an applicant for *state* unemployment benefits that knowingly making a false statement in support of his claim will expose him to federal prosecution for defrauding the United States Department of Labor. To meet the requirements of due process, a statute must give fair warning of what the law "commands or forbids." *Lanzetta v. New Jersey,* 306 U.S. 451, 453, 59 S.Ct. 618, 619, 83 L.Ed. 888 (1983). This principle was explained in *Connally v. General Construction Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1925) (citations omitted):

That the terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties, is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law. And a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law.

Assuming that Congress intended that false statements made to a *state* agency that receives funds for administering an unemployment benefits program from the federal government should be a federal offense, we must decide whether it did so in section 1001. It clearly has not done so expressly in drafting section 1001. "When Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity." *Bell v. United States,* 349 U.S. 81, 83, 75 S.Ct. 620, 622, 99 L.Ed. 905 (1955). Congress did not provide in section 1001 that a false state statement to a state agency to obtain state funds is a violation of section 1001. I would hold that section 1001 is not applicable unless express notice is given by Congress in some statute that an applicant for state funds violates section 1001.[1]

Even if it can be assumed that the language of section 1001 is unambiguous, the due process clause also protects an accused from a surprising expansion of the express words of Congress. In this regard, the Supreme Court has instructed as follows: "There can be no doubt that a deprivation of the right of fair warning can result not only from vague statutory language but also from an unforeseeable and retroactive judicial expansion of narrow and precise statutory language." *Bouie v. City of Co-*

---

1. As noted by the majority, Congress expressly provided in 26 U.S.C. § 3304 note (1983) that persons receiving supplemental unemployment benefit checks from federal funds who gave false information would be in violation of sec-

tion 1001. No such warning was provided by Congress for persons receiving *state* funds from an unemployment insurance program that receives federal money solely for administrative expenses.

*lumbia,* 378 U.S. 347, 352, 84 S.Ct. 1697, 1702, 12 L.Ed.2d 894 (1964).

This circuit has not previously determined that a person violates section 1001 by making a false statement to a *state* agency that receives funding for administrative expenses from a federal agency. Retroactive application of this expansion of the scope of section 1001 would violate due process. *Marks v. United States,* 430 U.S. 188, 192, 97 S.Ct. 990, 993, 51 L.Ed.2d 260 (1976), *quoting Bouie,* 378 U.S. at 353, 84 S.Ct. at 1702. I would hold that the due process clause prohibits retroactive application of section 1001 to those appellants who received unemployment benefits derived solely from state funds.

The evidence presented in support of the motion to dismiss the indictment does not show that the appellants who received state funds knew or reasonably should have known that their false statements would have an effect on a matter within the jurisdiction of a *federal* agency. The evidence shows instead that these appellants applied for and received state funded unemployment benefits after submitting information on a form furnished by the Oregon Division of Employment. The checks and the forms gave no notice that a federal agency was involved.

In *United States v. Yermian,* 468 U.S. 63, 68–75, 104 S.Ct. 2936, 2939–43, 82 L.Ed.2d 53 (1984) the Supreme Court held that it was unnecessary to prove that an accused charged with a violation of section 1001 had *actual* knowledge that false statements furnished to a defense contractor employer on a Department of Defense questionnaire were made in a matter within the jurisdiction of a federal agency. The court did not reach the question whether a "culpability requirement" must be read into section 1001 to comply with due process. *Id.* at 75 n. 14, 104 S.Ct. at 2943 n. 14.

In *Yermian,* the appellant was required to obtain a Department of Defense security clearance to have access to classified material. *Id.* at 65, 104 S.Ct. at 2937. He was instructed by his employer's security officer to fill out a "Worksheet for Preparation of Personnel Security Questionnaire." *Id.*

Thus, it was quite obvious in *Yermian* that the false information would have an impact on a *federal* agency. In the instant matter there is no evidence that any of the appellants who received state funds were aware that the forms they were asked to fill out involved a *federal* agency. Defense counsel in *Yermian* requested that the jury be instructed that the government had to prove that the defendant had actual knowledge that the false statements made in a matter within the jurisdiction of a federal agency. *Id.* at 66, 104 S.Ct. at 2938. The district court rejected the request. *Id.* Instead, the jury was instructed that the Government must prove that the accused knew or should have known that the information was to be submitted to a federal agency. *Id.* at 66–67, 104 S.Ct. at 2938–2939. Thus, in *Yermian,* the Government was required to prove that federal jurisdiction was reasonably foreseeable. *Id.* This court reversed on the ground that the district court erred in rejecting the *actual* knowledge instruction. The Supreme Court reversed our judgment holding that proof of actual knowledge was not required. *Id.* at 75, 104 S.Ct. at 2942. Left unresolved by *Yermian* was the question whether the Government must prove that federal agency jurisdiction was reasonably foreseeable. *Id.* at 75 n. 14, 104 S.Ct. at 2943 n. 14. In response to the contention that Section 1001 is a "trap for the unwary" imposing criminal sanctions on "wholly innocent conduct," *id.* at 74, 104 S.Ct. at 2942, the Supreme Court noted that "[t]he jury's finding that federal agency jurisdiction was reasonably foreseeable by the defendant, combined with the requirement that the defendant had actual knowledge of the falsity of those statements, precludes the possibility that criminal penalties were imposed on the basis of innocent conduct." *Id.* at 75 n. 14, 104 S.Ct. at 2943 n. 14.

In this matter no showing has been made that it was reasonably foreseeable to those appellants who received *state* funds that a federal agency was paying for administrative costs. The evidence establishes no

more than that a false statement has been made to a *state* agency in order to receive *state* funds. I concur because I believe that the district court erred in denying the motion to dismiss the indictment charging a violation of section 1001. Section 1001 does not give notice that it is a violation of section 1001 to give false information to obtain benefits payments from a state agency that receives funding solely from administrative expenses from a federal agency.

WIGGINS, Circuit Judge, concurring:

Because I conclude that the false statements of the appellants who received benefits solely from the State of Oregon are not material under 18 U.S.C. § 1001, I concur in the judgment. It is not necessary for me to decide the more difficult jurisdictional question, and I express no opinion on that issue.