**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**David HOLMES, Defendant–Appellant.**

No. 95–2184.

United States Court of Appeals,
Sixth Circuit.

Argued Aug. 5, 1996.

Decided April 18, 1997.

Stephen T. Robinson, Asst. U.S. Attorney, Kelvin W. Scott, U.S. Attorney (argued and briefed), Office of the U.S. Attorney, Detroit, MI, for Plaintiff–Appellee.

Stacey M. Studnicki (briefed), Federal Public Defenders Office, David C. Tholen (argued), Detroit, MI, for Defendant–Appellant.

Before: CONTIE, BOGGS, and NORRIS, Circuit Judges.

ALAN E. NORRIS, Circuit Judge.

Defendant, David Holmes, appeals his jury convictions resulting from a thirty-nine count indictment arising out of a scheme to defraud the Michigan unemployment insurance program. Defendant argues that the convictions must be reversed because (1) the indictment failed to state a federal claim as to eighteen of the counts, (2) the court improperly instructed the jury that it had determined that false statements made by defendant were material, (3) his criminal prosecution violated the Double Jeopardy Clause, (4) the court failed to exclude certain testimony under Rule 404(b) of the Federal Rules of Evi-

dence, and (5) the evidence is insufficient to support the convictions.

From October 1993 to April 1994, defendant was the owner of a construction and landscaping company. During that time, he filed a false claim for unemployment benefits with the Michigan Employment Security Commission ("MESC"). He also induced eight of his employees to file similar claims, helping them to prepare their applications for benefits and falsely certifying the dates of their employment with his company. When the MESC initiated an investigation into these claims, defendant instructed at least three of the employees to lie to any officials who might question them in order to prevent discovery of the fraud. A subsequent action brought by the MESC against defendant in state court under § 54 of the Michigan Employment Security Act, M.C.L.A. § 421.54, which provides that the MESC may recover amounts illegally obtained from the unemployment insurance program, plus additional damages equal to three times that amount, resulted in a judgment against defendant amounting to $30,472 in actual and treble damages.

On October 19, 1994, defendant was indicted in federal court on thirty-nine counts related to this scheme. Counts 1 through 13 alleged mail fraud in violation of 18 U.S.C. § 1341, based upon defendant's receipt of thirteen separate benefit checks delivered via United States mail; Count 14 alleged that defendant made false statements in violation of 18 U.S.C. § 1001, based upon his own application for benefits; Counts 15 through 21 alleged aiding and abetting mail fraud in violation of 18 U.S.C. §§ 2 and 1341, based upon defendant's role in his employees' receipt of benefit checks delivered via United States mail; Counts 22 through 29 alleged aiding and abetting false statements in violation of 18 U.S.C. §§ 2 and 1001, based upon defendant's encouragement of his employees to file false benefit applications; Counts 30 through 38 alleged false statements in violation of 18 U.S.C. § 1001, based upon forms defendant filed falsely indicating that the employees had worked for him previously; and Count 39 alleged witness tampering in violation of 18 U.S.C. § 1512. Defendant was convicted on all thirty-nine counts.

On appeal, defendant contends that the eighteen counts of the indictment that allege false statements in violation of 18 U.S.C. § 1001 fail to state a federal claim. At the time of the indictment, 18 U.S.C. § 1001 provided that

> [w]hoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

Defendant contends that the counts fail to state a federal claim because the false statements were made to the MESC, a state agency, and thus this matter was not "within the jurisdiction of any department or agency of the United States," as required by § 1001. Resolving this claim is a matter of statutory interpretation, and therefore is a question of law reviewed de novo by this court. *United States v. Moore*, 73 F.3d 666, 668 (6th Cir.), *cert. denied*, —— U.S. ——, 116 S.Ct. 1866, 134 L.Ed.2d 964 (1996). For the reasons set out below, we agree that defendant's convictions under 18 U.S.C. § 1001 cannot stand.

Michigan's unemployment system disburses benefits that are funded entirely by the state. While the federal Department of Labor subsidizes the administrative expenses of the MESC, including salaries, office space, and supplies, it does not pay for any of the actual benefits. The Secretary of Labor has authority to approve or disapprove the state's unemployment compensation program, and the Department of Labor conducts audits and investigations to ensure that the state program is being administered effectively and in compliance with the plan approved by the Secretary. In addition, the Department of Labor may take action against a state that refuses to pay otherwise valid claims. However, the Department has no authority to take any action against a

state or an individual when the individual obtains benefits to which he or she is not entitled.

Two courts of appeals for other circuits have considered whether 18 U.S.C. § 1001 supports federal prosecution of individuals who fraudulently obtain unemployment benefits funded wholly by the state, and they have reached contrary results. *See United States v. Herring,* 916 F.2d 1543 (11th Cir.1990) (finding the jurisdiction requirement of § 1001 satisfied in a case involving fraud upon the Georgia unemployment insurance program); *United States v. Facchini,* 874 F.2d 638 (9th Cir.1989) (en banc) (finding the jurisdiction requirement of § 1001 not satisfied in a case involving fraud upon the Oregon unemployment insurance program). We find the Ninth Circuit's reasoning in *Facchini* more persuasive.

In *Facchini,* the court noted that to meet the jurisdiction requirement of § 1001, the false statement at issue must relate to the " 'authorized functions of an agency or department' rather than 'matters peripheral to the business of that body.' " *Facchini,* 874 F.2d at 641 (quoting *United States v. Rodgers,* 466 U.S. 475, 479, 104 S.Ct. 1942, 1946, 80 L.Ed.2d 492 (1984)). Consequently, courts have refused to find jurisdiction absent a "direct relationship ... between the false statement and an authorized function of a federal agency or department." *Id.* Given the relationship that existed between the Oregon agency disbursing benefits and the Department of Labor—which mirrors the relationship between MESC and the Department of Labor—the court held that the jurisdiction element of § 1001 was not satisfied where the false statements were made on forms submitted to the Oregon unemployment insurance program. *Id.* at 643.

The *Facchini* court recognized that the funding provided by the Department of Labor to Oregon's unemployment insurance program comes with certain strings attached. For instance, the Secretary is authorized to monitor the administrative structure of the state program, and the state must make in-formation about benefit claimants available to the Department of Labor. However, the heart of the matter for the court was the lack of federal enforcement consequences in the event of fraud upon the state.

Mere access to information is not enough to establish jurisdiction. To establish jurisdiction, the information received must be directly related to an authorized function of the federal agency. Otherwise, the scope of section 1001 jurisdiction would be virtually limitless.

In this case, the federal government does have statutory access to information contained in the appellants' false statements. Under 42 U.S.C. § 503(a)(7), the Secretary is precluded from certifying any state unemployment insurance program unless state law makes information about benefit claimants available to the federal government. Such statements, however, are *peripheral* to the Secretary's monitoring function because, as we noted, the Secretary is not authorized to act in response to false statements made to a state unemployment insurance program. *See* 20 C.F.R. § 601.5(a) (authorizing the Secretary to act when a state improperly denies benefits but not when a state improperly provides benefits.) The federal interest in such statements is, therefore, indirect and *de minimis.*

*Id.* at 642.

We agree with the Ninth Circuit's reasoning and likewise conclude that the jurisdictional requirement of § 1001 is not satisfied in this case. Where, as here, the federal government neither funds the fraudulently obtained state benefit payments, nor has any authority to act upon discovering that the state program has been defrauded, false statements made to the state agency cannot be said to come "within the jurisdiction of any department or agency of the United States." Accordingly, defendant's convictions on charges of false statements, Counts 14 and 22 through 38 of the indictment, must be reversed.[1]

1. Defendant raises a second challenge to his convictions for making false statements, arguing that the district court improperly instructed the jury that it had determined that the government had established the materiality element of the false statements charges. We need not consider this

Defendant further argues that the mail fraud and false statements charges against him (Counts 1 through 38) violate the Double Jeopardy Clause of the Fifth Amendment, because the Michigan Employment Commission already obtained a civil judgment against him in state court, recovering actual damages plus treble damages. This court reviews the question of double jeopardy de novo. *United States v. WRW Corp.,* 986 F.2d 138, 140 (6th Cir.1993).

Defendant argues that the criminal charges against him violate the Double Jeopardy Clause because the treble damages portion of the state judgment against him was punitive, and therefore implicates double jeopardy. However, under the doctrine of dual sovereignty, successive prosecutions by different sovereigns do not offend double jeopardy. A prosecution in state court under state law, including a criminal or otherwise punitive proceeding, followed by a prosecution in federal court under federal law, does not violate the constitutional prohibition on double jeopardy. *See, e.g., Heath v. Alabama,* 474 U.S. 82, 88–89, 106 S.Ct. 433, 437–38, 88 L.Ed.2d 387 (1985); *United States v. Louisville Edible Oil Products, Inc.,* 926 F.2d 584, 587 (6th Cir.1991). It follows that, regardless of the punitive nature of the Michigan proceedings, defendant's prosecution in federal court does not violate the Double Jeopardy Clause.

Defendant next asserts that the district court erred in admitting the testimony of David Renaud and Barbara Douglas, because their testimony was inadmissible under Rule 404(b) of the Federal Rules of Evidence. Rule 404(b) provides that

[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during

trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

Fed.R.Evid. 404(b). Thus, for evidence to come within the scope of Rule 404(b), it must involve "other crimes, wrongs, or acts." Where such evidence is proffered, it will still be admissible so long as (1) it falls within one of the enumerated exceptions, and (2) upon request by the defense, the prosecution has provided notice that such evidence will be presented. We review de novo both the district court's determination that the proffered evidence involves other acts within the meaning of Rule 404(b), *United States v. Williams,* 989 F.2d 1061, 1070 (9th Cir.1993), and its determination that the other acts are admissible for a proper purpose under the Rule. *United States v. Gessa,* 971 F.2d 1257, 1261–62 (6th Cir.1992) (en banc).

Renaud was an individual who approached the defendant seeking a construction job and was asked by him to submit a fraudulent application for unemployment benefits. Renaud refused to do so and tore up the form. Weeks prior to trial, the defense received from the government a summary of a government agent's interview with Renaud. Just prior to trial, the defense asked the government whether it planned to introduce any evidence under Rule 404(b), and the government responded that it had no plans to do so. However, during voir dire the government mentioned Renaud as a potential witness.

When the government decided to call Renaud as a witness, the defense objected on the ground that no conduct involving Renaud or his application was specified in the indictment, so his testimony would involve other acts and would therefore be inadmissible because the prosecution had failed to comply with the notice requirement of Rule 404(b). The government responded that this evidence did not involve other acts, because it was part of the scheme at issue. The district court decided that while Renaud's testimony did involve other acts within the meaning of Rule 404(b), his testimony was admissible for a proper purpose under the Rule. The court

issue, however, in view of our holding that the

false statements convictions must be reversed.

noted that the defense had been given notice of the substance of Renaud's potential testimony, and that the government had merely failed to identify it specifically as Rule 404(b) material. To deal with the defense's assertion of unfair surprise, the district court ordered the government to postpone calling Renaud until five days later, thereby giving the defense time to prepare.

Even if Renaud's testimony was evidence of other acts within the meaning of Rule 404(b),[2] the district court did not err in admitting it, because it meets the other requirements for admissibility under the Rule. The evidence was not offered in order to "prove the character of a person in order to show action in conformity therewith." Rather, it establishes defendant's plan to defraud the Michigan unemployment insurance program, and thus falls within one of the specifically enumerated exceptions to the Rule.

The notice requirement was also satisfied. Rule 404(b) provides that notice to the defense may be provided "during trial if the court excuses pretrial notice on good cause shown." In this case, it was not clear that the testimony involved other acts within the meaning of Rule 404(b). Moreover, the defense was aware that Renaud might be called as a witness, since the government had mentioned him during voir dire and had provided the defense with a summary of a government agent's interview with him weeks prior to trial. Finally, the district court postponed Renaud's testimony for five days, thereby giving the defense time to prepare, and removing any possibility of unwarranted prejudice to the defense. The testimony was therefore properly admitted.

■ The defendant also objected to the testimony of Barbara Douglas, contending that it too violated Rule 404(b). Douglas, an employee of the City of Detroit, was called to describe the program under which defendant was renovating the house which was the subject of the employment relationships in this case. She testified that under a "repair to own" program, the city pays contractors to renovate buildings by allowing them to keep the restored buildings. This testimony shows that defendant sought to have his employees renovate a home for his benefit without having to pay them for their labor. The defense argued that this evidence was covered by Rule 404(b) because it would show defendant's motive to have his employees file fraudulent unemployment claims. Clearly, this evidence does not come within the scope of Rule 404(b), as it fails to meet the threshold requirement that it involve "other crimes, wrongs, or acts." Defendant's challenge to the admission of this testimony is therefore without merit.

Finally, defendant contends that there was insufficient evidence to sustain his convictions. "The standard of review for determining the sufficiency of the evidence is 'whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Collins,* 78 F.3d 1021, 1030 (6th Cir.) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)), *cert. denied,* —— U.S. ——, 117 S.Ct. 189, 136 L.Ed.2d 127 (1996). Having reviewed the record, we conclude that, exclusive of the false statements charges which we reverse for failure to satisfy the jurisdiction element of 18 U.S.C. § 1001, the prosecution presented sufficient evidence to establish the elements of each of the remaining counts of the indictment.

The judgment of the district court with respect to Counts 1 through 13, 15 through 21, and 39 is **affirmed**; with respect to Counts 14 and 22 through 38, the judgment of the district court is **reversed**, and this cause is **remanded** for resentencing.

---

**2.** The government contends that this testimony is not within the scope of Rule 404(b), since it involves "intrinsic acts"—acts that are part of a continuing pattern of illegal activity and thus do not implicate Rule 404(b). *See United States v.* *Barnes,* 49 F.3d 1144 (6th Cir.1995). We need not reach this issue, however, since this evidence meets the requirements for admissibility, even if it is within the scope of Rule 404(b).