**UNITED STATES of America,**

v.

**Mohammed SALMAN, a/k/a: M.S. Eddine Salman, Defendant.**

**No. CR–01–481–A.**

United States District Court,
E.D. Virginia,
Alexandria Division.

Feb. 14, 2002.

Charles P. Rosenberg, Hunton & Williams, McLean, VA, for Defendant.

Michael Rich, Asst. U.S. Atty., Alexandria, VA, for U.S.

### MEMORANDUM OPINION

CACHERIS, District Judge.

This matter is before the Court on Defendant's Motion to Dismiss Count II of the Indictment. At issue is whether the false statements alleged in the Indictment satisfy the jurisdictional requirement of 18 U.S.C. § 1001 in light of the fact that they were made to a state official acting under the direction of the United States Marshals Service (the "Marshals Service") pursuant to a valid contract, rather than being made directly to a federal official. Finding no case law on point from the United States Court of Appeals for the Fourth Circuit, and noting that other federal circuits have reached mixed conclusions with respect to similar issues, the Court will treat this case as presenting a matter of first impression within this Circuit.

### I. Background

Defendant Mohammed Salman ("Defendant") was indicted on December 20, 2001. The indictment includes two counts: (1) obstruction of justice in violation of 18 U.S.C. § 1503 (Count I); and (2) making false statements in violation of 18 U.S.C. § 1001 (Count II). The allegations contained in the indictment stem from incidents occurring on or about November 28 and 29, 2001, and are accepted as true for purposes of this motion.

On November 26, 2001, an arrest warrant was issued for Hussein Addine Sel-

men,[1] a citizen of Lebanon and the brother of Defendant. (Indictment at 1.) According to the Indictment, Hussein Addine Selmen entered the country illegally and has been charged with making a false statement on a United States passport application in violation of 18 U.S.C. § 1542. (*Id.*)

Equipped with an arrest warrant, federal law enforcement agents arrived at Hussein Addine Selmen's apartment in Washington, D.C., at approximately 7:05 a.m. on the morning of November 28, 2001, and knocked on the door. (*Id.* at 2.) Hussein Addine Selmen was arrested immediately upon answering the door. (*Id.*) Defendant subsequently arrived at the apartment. He identified himself as Hussein Addine Selmen's brother, stated that the apartment was his residence as well, and ordered the law enforcement officers to leave. (*Id.*)

The officers told Defendant that they were there to execute a valid arrest warrant for Hussein Addine Selmen, that he had refused to allow them to search the apartment, that a search warrant would be requested, and that, in the meantime, the apartment was "frozen" (*i.e.*, the apartment could not be disturbed until a search warrant arrived). (*Id.* at 2–3.) Defendant nevertheless entered the bedroom of the apartment to get clothes for his brother. (*Id.* at 3.) While in the bedroom, he took his brother's wallet from the dresser and put it in his pocket. (*Id.*) Upon being ordered by law enforcement officers to place the wallet back on the dresser, Defendant refused, stating that "It is my wallet." (*Id.*) After being threatened with arrest, Defendant returned the wallet to the dresser but retained much of its contents. (*Id.*) After again being threatened with arrest, Defendant took the wallet's contents from his pocket and placed them back into the wallet. (*Id.*)

Subsequently, on or about November 29, 2001, Defendant arrived at the Alexandria Detention Center (the "Detention Center"), where his brother was housed as an inmate pursuant to an agreement between the Marshals Service and the Alexandria Sheriff, as authorized by federal law. *See* 18 U.S.C. § 4013 (permitting the Attorney General to contract with state or local governments for the housing of federal prisoners). Defendant falsely identified himself to the deputy sheriff on duty as a medical doctor summoned to render medical treatment to Hussein Addine Selmen. (*Id.* at 5–6.) The deputy sheriff is not a federal employee.

Defendant now seeks dismissal of Count II of the Indictment (the false statement charge), arguing that the false statement alleged to have been made by him at the Detention Center, even when accepted as true for purposes of this motion, fails to satisfy the jurisdictional requirement of 18 U.S.C. § 1001 because it was made to a state official.

## II. Standard of Review

Federal Rule of Criminal Procedure 12(b), which governs pretrial motions, provides that "[a]ny defense, objection, or request which is capable of determination without the trial of the general issue may be raised before trial by motion ... [including] (2) Defenses and objections based on defects in the indictment or information." Fed.R.Crim.P. 12(b)(2). An indictment that fails to allege all the elements of the charged offense is fatally defective. *Hamling v. United States*, 418 U.S. 87, 117, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974); *United States v. Sutton*, 961 F.2d 476, 479 (4th Cir.1992). The remedy for an insufficient indictment is to dismiss the charge. *See* Wright & Miller, *Federal Practice and*

---

**1.** Although Defendant's last name is "Salman," the correct spelling of his brother's name, according to the indictment, is "Selmen."

*Procedure* § 129 (1999); *see also Russell v. United States,* 369 U.S. 749, 769–70, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962). .

### III. Analysis

Section 1001 provides, in pertinent part, as follows:

> whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully ... makes any materially false, fictitious, or fraudulent statement or representation ... shall be [punished].

18 U.S.C. § 1001.[2] The sole issue before the Court is whether the allegations in Count II, having been accepted as true for purposes of this motion, fall within the scope of § 1001.

Defendant's Motion to Dismiss is premised on his argument that the allegedly false statements are not "within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States" as required by § 1001. Specifically, Defendant cites the Ninth Circuit's decision in *United States v. Facchini,* 874 F.2d 638 (9th Cir.1989) (*en banc*), and the Sixth Circuit's decision in *United States v. Holmes,* 111 F.3d 463 (6th Cir.1997), both of which limit the scope of § 1001 in situations where, as here, the alleged false statements were made to non-federal entities and had no direct financial impact on the federal government. (Def.'s Mot. to Dismiss at 4.)

The Government, in response, contends that the Eleventh Circuit's decision in *United States v. Herring,* 916 F.2d 1543 (11th Cir.1990), and the Second Circuit's decision in *United States v. Davis,* 8 F.3d 923 (2d Cir.1993), extend the scope of § 1001 to include such situations. The parties have not cited any case law from the Fourth Circuit or the Eastern District of Virginia which addresses this topic, and the Court is aware of none.

### A.

■ As the Supreme Court has noted, the term "jurisdiction," as used in § 1001, "is not defined in the statute." *United States v. Rodgers,* 466 U.S. 475, 479, 104 S.Ct. 1942, 80 L.Ed.2d 492 (1984). The *Rodgers* Court, in its interpretation of the term, noted that "[t]he most natural, nontechnical reading of the statutory language is that it covers all matters confided to the authority of an agency or department." *Id.* It held that "[a] department or agency has jurisdiction ... when it has the power to exercise authority in a particular situation." *Id.* The Court therefore concluded that "the phrase 'within the jurisdiction' merely differentiates the official, authorized functions of an agency or department from matters peripheral to the business of that body." *Id.*

In *Facchini,* the Ninth Circuit interpreted the Supreme Court's ruling in *Rodgers* as requiring a "direct relationship ... between the false statement and an authorized function of a federal agency or department." 874 F.2d at 641. In so doing, it expressly rejected the government's argument that the scope of the act is premised on the federal government's ability to access the information in question. *Id.* at 642. It therefore concluded that, "[t]o establish jurisdiction, the information received must be directly related to an authorized function of the federal agency.

---

2. Defendant notes that the wording of § 1001 was amended in 1996. Until that time, § 1001 applied to statements "within the jurisdiction of any department or agency of the United States." Defendant concedes, however, that pre–1996 case law is nevertheless applicable in construing the statute as it relates to this case. (Def.'s Mot. to Dismiss at n. 1.)

Otherwise the scope of section 1001 jurisdiction would be virtually limitless." *Id.*

This approach was followed by the Sixth Circuit in *Holmes*. There, the court held that "[w]here ... the federal government neither funds the fraudulently obtained state benefit payments, nor has any authority to act upon discovering that the state program has been defrauded, false statements made to the state agency cannot be said to come 'within the jurisdiction of any department or agency of the United States.'" 111 F.3d at 466.[3]

However, the Ninth Circuit's holding in *Facchini* was expressly rejected by the Eleventh Circuit in *Herring*. *See* 916 F.2d at 1546. The *Herring* court noted as persuasive its belief that the Ninth Circuit's holding in *Facchini* was premised "on the technical distinction of the Secretary of Labor's administrative involvement rather than operational involvement in the state unemployment programs" at issue in that case. 916 F.2d at 1546. The Eleventh Circuit therefore suggested that the *Facchini* opinion ran afoul of the Supreme Court's holding in *Rodgers*, which expressly states that the jurisdictional provision of § 1001 should not be given a narrow or technical interpretation. 916 F.2d at 1547 (citing *Rodgers*, 466 U.S. at 480, 104 S.Ct. 1942).

Similarly, the Second Circuit, in the case most factually similar to the one at bar, upheld a district court's finding that an inmate's false statements to a local law enforcement official fell within the jurisdiction of both the Bureau of Prisons and the Marshals Service "because the Marshals Service had a contract with [the state] to house federal prisoners and the Bureau of Prisons utilized this contract to house prisoners within its control." *Davis*, 8 F.3d at

929. The Second Circuit further held that the fact that "the Bureau of Prisons chose to delegate part of [its responsibility for the care of federal prisoners] to a state facility does not remove these matters from its jurisdiction." *Id.* It therefore rejected Davis's argument that the false statements were "merely peripheral to the business" of the federal agencies in question and upheld his conviction. *Id.*

After carefully analyzing the case law cited above, the Court finds the approach taken by the Eleventh and Second Circuits to be more persuasive. This decision is based in large part on the Court's determination that the decisions of the Second and Eleventh Circuits hew more closely to the Supreme Court's instruction that the jurisdictional provision of § 1001 should not be construed in a narrow or technical manner. *See Rodgers*, 466 U.S. at 480, 104 S.Ct. 1942.

In addition, the Court also notes as persuasive the Government's argument that this somewhat broader interpretation of § 1001's jurisdictional scope is consistent with that taken by the Fourth Circuit in its interpretation of the jurisdictional scope of 18 U.S.C. § 111, which imposes criminal liability on, *inter alia*, persons who assault federal marshals or "person[s] employed to assist" federal marshals. 18 U.S.C. §§ 111, 1114; *see United States v. Murphy*, 35 F.3d 143 (4th Cir.1994) (holding that the scope of 18 U.S.C. § 111 is broad enough to include assaults on local law enforcement officials responsible for housing federal prisoners pursuant to a contract with the Marshals Service). Although § 111 differs from § 1001 in that § 111 specifically references persons employed to assist federal marshals while

---

**3.** The Court notes, however, that a previous panel of the Sixth Circuit held that the imposition of § 1001 liability is appropriate when false statements are made to state or local agencies that "receiv[e] federal support or [are] subject to federal regulation." *United States v. Gibson*, 881 F.2d 318, 322 (6th Cir. 1989) (citing cases).

§ 1001 contains no such provision, the Court nevertheless finds the rationale articulated by the Fourth Circuit in *Murphy* applicable to the case at bar. Specifically, the Court finds persuasive the Fourth Circuit's statement that criminal liability was appropriate under § 111 in part because the local law enforcement officer involved in that case "was serving precisely the same federal interest that a marshal would serve while maintaining custody of a federal prisoner," and that the lack of the physical presence of, or control by, a federal officer was immaterial under case law interpreting § 111. *Id.* at 147. Accordingly, in addition to finding the approach of the Second and Eleventh Circuits consistent with the Supreme Court's holding in *Rodgers,* the Court also concludes that this approach more closely comports with existing Fourth Circuit precedent on similar jurisdictional issues.

In addition, the Court rejects Defendant's argument that the Second Circuit's decision in *Davis* somehow weighs in favor of dismissal of the false statement charge in this case. According to Defendant, the Second Circuit's decision in *Davis*·is consistent with his argument here in the sense that the *Davis* court focused on the division of responsibilities between federal and state officials as specified in the contract. Specifically, the *Davis* court analyzed the language of the contract at issue in that case and noted that "[t]he fraudulent documents given by Davis to [state] officials related to the determination of Davis' release date and to his actual parole and release, matters clearly within the authority of the of the Bureau of Prisons and over which authority remained in the Bureau of Prisons pursuant to the [state agency's] own administrative directive." 8 F.3d at 929. Defendant therefore argues that, under the contract at issue in this case, which states that the Detention Center "shall accept and provide secure custody, care, and safekeeping of federal prisoners in accordance with state and local laws, standards, policies, and procedures,"[4] "the custodial and care taking functions of the facility fall clearly within the sphere of responsibility left to the City." (Def.'s Reply Br. at 3.)

The Court rejects Defendant's argument in large part because, although the contract language in *Davis* supported the Second Circuit's ultimate conclusion, the primary holding was not based solely on a parsing of the contract language. Rather, the primary holding in *Davis* was as follows:

> In situations in which a federal agency is overseeing a state agency, *it is the mere existence of the federal agency's supervisory authority that is important to determining jurisdiction.* The district court found that the false statements made by Davis to officials at [the state correctional center] were within the jurisdiction of the Bureau of Prisons and the Marshals Service because the Marshals Service had a contract with [the state] to house federal prisoners and the Bureau of Prisons utilized this contract to house prisoners within its control. The Bureau of Prisons has primary responsibility for the placement, care and subsistence of 'all persons charged with or convicted of offenses against the United States.' 18 U.S.C. § 4042(2). *Merely because the Bureau of Prisons chose to delegate part of this responsibility to a state facility does not remove these matters from its jurisdiction.*

8 F.3d at 929 (citation omitted) (emphasis added). Accordingly, the Court finds that

---

4. Intergovernmental Cooperative Agreement Number 08–83–99, Article V, Adequate Detention Space & Service, ¶ A.

the fact that the contract at issue in this case delegates many of the day-to-day functions to local officials is not dispositive of the federal jurisdictional issue in this case. Rather, as in *Davis*, "it is the mere existence of the federal agency's supervisory authority that is important to determining jurisdiction." 8 F.3d at 929.[5] Such supervisory authority clearly exists in this case, as evidenced by the language used in various sections of the contract itself.[6] In addition, the Court believes that an approach based on the case-by-case parsing of contract language in order to determine the scope of § 1001's jurisdiction—as urged by Defendant—directly contradicts the Supreme Court's admonition in *Rodgers* that "the term 'jurisdiction' should not be given a narrow or technical meaning for purposes of § 1001." 466 U.S. at 480, 104 S.Ct. 1942 (quoting *Bryson v. United States*, 396 U.S. 64, 90 S.Ct. 355, 24 L.Ed.2d 264 (1969)).

■ Finally, the Court notes that, at bottom, the Marshals Service has essentially done nothing more than rent bed space for approximately one hundred federal prisoners at the Alexandria Detention Center, presumably because of its close proximity to the federal courthouse in Alexandria. The Marshals Service still retains general supervisory control over these prisoners. While the contract leaves the day-to-day functioning of the prison to the discretion of local officials, these officials clearly remain accountable to the federal government. Accordingly, as with the

Bureau of Prisons in *Davis*, a decision by the Marshals Service to delegate some of its responsibility to local officials "does not remove these matters from its jurisdiction" for purposes of determining the scope of criminal liability under § 1001.

### B.

■ In the alternative, the Court rejects Defendant's argument that his allegedly false statements are not directly related to the "authorized function" of the Marshals Service and that they are, at most, only peripherally related to the Service's authorized function. The Court therefore holds that, even if it were to adopt the Ninth Circuit's approach to this issue as urged by Defendant, it would nevertheless reach the same conclusion regarding the disposition of the instant motion. That is, even under the more restrictive view taken in *Facchini*, jurisdiction under § 1001 is appropriate in situations in which a direct relationship exists "between the false statement and an authorized function of a federal agency or department." *Facchini*, 874 F.2d at 641. In both *Facchini* and *Holmes*, the false statements at issue were made to a state agency in order to obtain money from state unemployment programs. There was therefore no direct relationship between the false statements and the authorized function of any federal agency.

Such is clearly not the case here, where the Marshals Service simply delegated a

---

**5.** The Court notes that this holding by the Second Circuit comports with the Supreme Court's statement in *Rodgers* that jurisdiction is based on the federal government's "power to exercise authority in a particular situation." 466 U.S. at 479, 104 S.Ct. 1942.

**6.** *See, e.g.,* Intergovernmental Cooperative Agreement Number 08–83–99 at 2 (stating that any subcontracts or other agreements made by the city must be approved by the Marshals Service and "must not affect the

[city's] overall responsibility for the duration of the project *and accountability to the Government* ") (emphasis added); *id.* (stating that the city will receive federal funding and, in return, is required to "comply with applicable federal law and regulations governing grants and cooperative agreements"); *id.* at 3 (providing for "monthly on-site inspections" by the Marshals Service of all projects initiated under the agreement); *id.* at 4 (stating that the detention space provided under the agreement is for prisoners "in USMS custody").

portion of its responsibility for housing and detaining federal prisoners to local officials. The alleged false statement in this case, which a fair reading of the indictment suggests was made in an effort to gain a level of access to a federal prisoner which Defendant would not otherwise have, directly affected an "authorized function" of the Marshals Service (*i.e.,* the detention of Hussein Addine Selmen). Indeed, in light of the sheriff's role in housing federal prisoners pursuant to a valid agreement under 18 U.S.C. § 4013, it is difficult to imagine an alleged false statement that more directly affects an "authorized function" of the Marshals Service than one made to a law enforcement official charged with detaining a federal prisoner in order to fraudulently obtain access to that prisoner.

■ Simply stated, Hussein Addine Selmen is a federal prisoner regardless of whether he is detained directly by the Marshals Service or by a local official to whom the Marshals Service has properly delegated this responsibility. Access to him is therefore a federal issue within the jurisdiction of the Marshals Service. Accordingly, any false statement made in order to gain access to him falls within the scope of § 1001, which, as the Government correctly notes, hinges not on the person to whom the statement is made, but rather on whether the statement falls within the jurisdiction of a branch of the federal government. *See Davis,* 8 F.3d at 929; *see also Gibson,* 881 F.2d at 322 (holding that "[t]here is no implicit requirement that the statements be made directly to, or even be received by, the federal department or agency" in question).

Here, the statement clearly falls within the authorized function of the Marshals Service, and is not in any way periphery to the Marshals' function. The Court therefore holds that Defendant's Motion to Dismiss fails even under the more restrictive view of § 1001 jurisdiction adopted by the Sixth and Ninth Circuits.

### IV. Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss Count II of the Indictment will be DENIED. An appropriate order shall issue.

### ORDER

For the reasons stated in the accompanying Memorandum Opinion, it is hereby ORDERED that:

1) Defendant's Motion to Dismiss Count II of the Indictment is DENIED; and

2) The Clerk of the Court shall forward copies of this ORDER to all counsel of record.